CASE NO: _____

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

*IN RE* JINGSHENG WEI, Petitioner.

PETITION FOR WRIT OF MANDAMUS

GREENBERG TRAURIG, LLP
David G. Barger
1750 Tysons Blvd.
Suite 1000
McLean, VA 22102
Tel: (703) 749-1300
Email: bargerd@gtlaw.com

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests expedited briefing in a separate motion. To facilitate the rapid resolution of this petition, he will not request oral argument but will present himself to the Court for oral argument if the Court determines oral argument is necessary.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................1

STATEMENT OF THE ISSUES PRESENTED......................................3

STATEMENT OF RELIEF SOUGHT....................................................3

STATEMENT OF FACTS........................................................................3

   I.    WEI'S HISTORY AS AN OPPRESSED CHINESE CIVIL
        RIGHTS ADVOCATE...........................................................3

   II.   WEI PREVAILS IN LITIGATION AGAINST THE SAME
        PLAINTIFFS IN THE DISTRICT OF COLUMBIA.........................5

   III.  PLAINTIFFS TAKE A SECOND BITE AT THE APPLE..................7

STATEMENT OF REASONS WHY THE WRIT SHOULD ISSUE......................11

   I.    WEI HAS NO OTHER ADEQUATE MEANS TO SEEK
        REVIEW AND PREVENT AN UNWARRANTED INVASION
        OF HIS PRIVACY..............................................................12

   II.   THE WRIT IS APPROPRIATE UNDER THE
        CIRCUMSTANCES...........................................................13

   III.  THE RIGHT TO ISSUANCE IS CLEAR AND
        INDISPUTABLE...............................................................13

        A.   The District Court Failed to Recognize the Rule 35
              Imposes a Higher Standard than Rule 26's
              Discoverability Standard..............................................15

        B.   Genetic Paternity is Not in Controversy Where the Only
              Claim Against Wei is for Defamation for Calling
              Plaintiffs False and Fraudulent in Connection With Their
              Allegations of Rape and Breach of Contract.......................16

        C.   Plaintiffs Cannot Establish Good Cause in Light of the
              Legal Presumption Mr. Zhang is Defendant Zhang's
              Father.......................................................................21

        D.   The Court Abused its Discretion By Ignoring Wei's
              Reasonable and Credible Concerns the CCP Seeks to
              Invade His Privacy to Harass Him for His Civil Rights
              Work.........................................................................24

CONCLUSION.......................................................................................28

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Bowen v. Parking Auth. of City of Camden*,
214 F.R.D. 188 (D.N.J. 2003)......................................................16

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004).....................................................................11

*Curtis v. Express, Inc.*,
868 F.Supp. 467 (N.D.N.Y. 1994)...............................................24

*Doe v. Sidar*,
93 F.4th 241 (4th Cir. 2024) ........................................................12

*Dunford v. Rolly Marine Serv. Co.*,
233 F.R.D. 635 (S.D. Fla. 2005)..................................................20

*Fraternal Ord. of Police, Lodge No. 5 v. City of Philadelphia*,
812 F.2d 105 (3d Cir. 1987) ........................................................14

*Gavin v. Hilton Worldwide, Inc.*,
291 F.R.D. 161 (N.D. Cal. 2013)..................................................21

*In re Grand Jury Subpoenas, Apr., 1978, at Baltimore*,
581 F.2d 1103 (4th Cir. 1978) .....................................................12

*Hardy v. Riser*,
309 F. Supp. 1234 (N. D. Miss. 1970)..........................................24

*Hickman v. Taylor*
329 U.S. 495 (1947)......................................................................15

*Marroni v. Matey*,
82 F.R.D. 371 (E.D. Pa. 1979)................................................21, 22

*Minnesota Life Ins. Co. v. Jones*,
771 F.3d 387 (7th Cir. 2014) (Posner, J.) ................................22, 23

*Nathai v. Florida Detroit Diesel-Allison, Inc.*,
268 F.R.D. 398 (M.D. Fla. 2010) ................................................16

*In re Pruett*,
   133 F.3d 275 (4th Cir. 1997) ...............................................................12

*Schlagenhauf v. Holder*,
   379 U.S. 104 (1964)...........................................................10, 13, 14, 16, 18

*Storms v. Lowe's Home Centers, Inc.*,
   211 F.R.D. 296 (W.D. Va. 2002)........................................................21

*In re The City of New York*,
   607 F.3d 923 (2d Cir. 2010) ...............................................................12

*U. S. Bd. of Parole v. Merhige*,
   487 F.2d 25 (4th Cir. 1973) ...............................................................12

*United States v. Westinghouse Elec. Corp.*,
   638 F.2d 570 (3d Cir. 1980) ...............................................................14

*Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs,*
   315 F.R.D. 612 (N.D. Fla. 2016)..................................................21, 25

*Winters v. Travia*,
   495 F.2d 839 (2d Cir. 1974) ...............................................................13

*Young v. United States*,
   311 F.R.D. 117 (D.N.J. 2015)........................................................19, 20

**State Cases**

*Neuman v. Neuman*,
   377 A.2d 393 (D.C. 1977) ...............................................................24

**State Statutes**

Md. Code, Fam. Law § 5–3A–06(a)........................................................23

**Rules**

Fed. R. Civ. P. 26 ...........................................................................14, 15

Fed. R. Civ. P. 35 ..............................................................................*passim*

Fed. R. Civ. P. 35(a).....................................................................13, 22, 24

Fed. R. Civ. P. 35(a)(1) ........................................................16

Fed. R. Civ. P. 35(a)(2)(A) ....................................................25

Fed. R. Evid. 201(b) ...............................................................5

**Other Authorities**

Foreign Abuse of U.S. Courts: Hearing Before the H. Comm. On the
    Judiciary, 119th Cong. (July 22, 2025), *available at*
    https://judiciary.house.gov/committee-activity/hearings/foreign-
    abuse-us-courts-0 (last visited August 7, 2025) ................................25

Foreign Abuse of U.S. Courts: Hearing Before the H. Comm. On the
    Judiciary, 119th Cong. (July 22, 2025), Testimony by Emily de La
    Bruyere Co-founder, Horizon Advisory Senior Fellow, Foundation
    for Defense of Democracies *available at* chrome-
    extension://efaidnbmnnnibpcajpcglclefindmkaj/https://judiciary.ho
    use.gov/      sites/evo-subsites/republicans-
    judiciary.house.gov/files/evo-media-document/de-la-bruyere-
    testimony.pdf (last visited August 7, 2025) ......................................27

Foreign Abuse of U.S. Courts:Hearing Before the H. Comm. On the
    Judiciary, 119th Cong. (July 22, 2025), Testimony of Julian G. Ku,
    House Committee on the Judiciary, Subcommittee on Courts,
    Intellectual Property, Artificial Intelligent, and the Internet: Why
    the U.S. Should Harden Its Defenses Against China's Asymmetric
    Lawfare .................................................................................................26

https://judiciary.house.gov/sites/evo-subsites/republicans-
    judiciary.house.gov/files/ evo-media-document/ku-testimony.pdf
    (last visited August 7, 2025) .................................................................26

Jill I. Goldenziel, Law as a Battlefield: The U.S., China, and the
    Global Escalation of Lawfare, 106 CORNELL L. REV. 1085
    (2021) ...................................................................................................26

Julian Ku, China's Successful Foray Into Asymmetric Lawfare,
    LAWFARE (Sept. 29, 2021), *available at*
    https://www.lawfaremedia.org/article/chinassuccessful-foray-
    asymmetric-lawfare (last visited August 7, 2025) ..............................26

National Public Radio (Feb. 23, 2024), *available at*
https://www.npr.org/2024/02/23/1233355132/chinese-hacking-scheme-focused-on-harassing-dissidents-leaked-documents-shows
(last visited August 7, 2025)...............................................................................25

RADIO FREE ASIA (Mar. 19, 2025) *available at*
https://www.rfa.org/english/special-reports/china-lawfare-transnational-repression/ (last visited August 7, 2025).......................................25

## PRELIMINARY STATEMENT

This petition raises significant questions regarding a court's ability to violate bodily autonomy and privacy by ordering genetic testing pursuant to <u>Federal Rule of Civil Procedure 35</u> for, at best, evidence potentially tangentially relevant to a claim against a different defendant in a defamation action. Here, the District Court's Rule 35 Order constitutes an oppressive use of Rule 35 and warrants the extraordinary remedy of a writ. Not only has the lower court plainly erred in assessing each aspect of Rule 35, it ignored the potential danger that Rule 35 is being used as a retaliatory measure to silence political, pro-democracy speech.

Respondents-Plaintiffs Huaizhao Liu and Charlotte Zhang ("Plaintiffs") bring a single claim for defamation against Petitioner Jingsheng Wei. Whether Wei is or is not the genetic parent of Liu's daughter, Zhang, is not directly probative of liability for defamation in any way. Nonetheless, the District Court ordered Wei to undergo a genetic paternity test to determine whether he is the biological parent of Zhang. In so doing, the lower court committed four legal errors.

First, the Rule 35 Order failed to recognize the heightened standard and burden on a moving party for seeking a Rule 35 examination and applied a lower, relevance analysis.

Second, it concluded biological paternity was "in controversy" based on the claims Plaintiffs raised against a different defendant, Respondent-Defendant Ciping

Huang. Moreover, the claims against Huang still do not warrant the use of a Rule 35 examination.

Third, in analyzing whether Plaintiffs demonstrated "good cause" for the genetic testing, the District Court simply accepted Plaintiffs' conclusory allegations that they could not obtain any other evidence regarding paternity. Under any circumstances, mere allegations are insufficient to show good cause. Here it is particularly problematic because the lower court accepted those allegations over a legal presumption that Wei is not the father and where there was no evidence to challenge that legal presumption.

Fourth, the lower court abused its discretion by ignoring the danger that this case risks in weaponization of Rule 35. It is widely accepted that the Chinese Communist Party ("CCP") routinely uses the U.S. legal system to harass dissidents in a practice known as "lawfare." Wei is a well-known pro-democracy Chinese dissident who languished in a Chinese prison for almost 20 years. Since coming to the United States, he has been subject to never-ending harassment by the CCP and its supporters in order to discredit his work. Wei believes this includes a five-year court battle in the District of Columbia Superior Court ("DC Superior Court") against the same Plaintiffs, Liu and Zhang, over nearly identical issues, including that Wei allegedly raped Liu and fathered Zhang. Wei denounced this DC litigation as baseless and a CCP effort delegitimize his civil rights advocacy. The DC Superior

Court entered summary judgment in Wei's favor in July 2024, including on a defamation claim for substantially similar statements that are at issue here. It also denied an identical rule 35 request. On the heels of defeat, Plaintiffs sued Wei for defamation based on a social media post about his victory in DC Superior Court. Plaintiffs' refusal to accept the DC Superior Court's final judgment reinforced his belief that Plaintiffs are using litigation to support the CCP's agenda. This context is central to a Rule 35 analysis. It is for these very reasons that Wei now pursues a petition for a writ of mandamus.

## STATEMENT OF THE ISSUES PRESENTED

Whether the District Court erred in ordering a party to undergo a genetic paternity test when the issue of biological paternity is not in controversy as to that party, the moving parties did not offer evidence they had exhausted other sources of discovery, and where there is a danger that Rule 35 is being used to harass?

## STATEMENT OF RELIEF SOUGHT

Wei seeks a writ directing the District Court to quash its July 21, 2025 Order granting Plaintiffs' Rule 35 motion for a DNA paternity test of Wei.

## STATEMENT OF FACTS

### I.      WEI'S HISTORY AS AN OPPRESSED CHINESE CIVIL RIGHTS ADVOCATE

Wei was a political prisoner incarcerated in China for nearly 20 years for advocating for democracy. Hr'g T. (July 18, 2025), attached hereto as **Ex. A**, 70:17-

19; Dkt. 63, Second Am. Compl. ("SAC"), attached hereto as **Ex. B**, at n.4. Since his release, Wei has remained a prominent pro-democracy activist in support of a free China and has been highly critical of the CCP's human rights violations. Dkt. 67-1, Wei's Mot. to Dismiss SAC at 16, Dkt 67, with all original exhibits, attached hereto as **Ex. C**.[1]

In 2018, Liu first contacted Wei, informing him that she had fathered her child 18 years prior, and demanding money because she had raised Zhang while a single mother. *See* **Ex. A**, Hr'g T. 29:20-22; **Ex. B**, SAC ¶ 65; **Ex. C,** Dkt. 67-4, Mot. to Dismiss, Ex. C at 8. Wei communicated with Lui, asking for more information, but Liu remained evasive and her demands became threats. Ultimately, Lui sued Wei in the D.C. Superior Court, Civil Action No. 2019-CA-005052-B. **Ex. B**, SAC ¶ 17. Wei eventually learned Liu was married when she conceived and had Zhang, Liu's husband, Meng Zhang, is listed as Zhang's father on the birth certificate, and her husband had raised Zhang. **Ex. A**, Hr'g T. 71:19-72:8; **Ex. B**, SAC ¶¶ 65, 71; **Ex. C**, Dkt 67-6, Mot. to Dismiss, Ex. E, *Liu et al. v. Wei, No. 2019 CA 005052 B*, July 2,

---

[1] The Court considered the Rule 35 motion and Wei's motion to dismiss concurrently and heard oral argument on both motions at the same time because the motion to dismiss had the potential to moot the Rule 35 motion. Thus, the facts in Wei's motion to dismiss and made during oral argument on that motion were before the court for the purpose of the Rule 35 motion as well, but not repeated in the Rule 35 motion to avoid duplication.

2024 Omnibus Order ("July 2 Omnibus Order") at 5.[2] Realizing Liu had made numerous misrepresentations, he refused to engage with Liu, prompting her to file the prior lawsuit against him in 2019 for breach of contract and defamation, and later amended to include a claim to establish parentage and petition for child support. **Ex. A**, Hr'g T. 9:18-21; **Ex. B**, SAC ¶ 17; **Ex. C**, Dkt 67-6, July 2 Omnibus Order at 1, 26.

## II. WEI PREVAILS IN LITIGATION AGAINST THE SAME PLAINTIFFS IN THE DISTRICT OF COLUMBIA

Lui, with the assistance of counsel,[3] filed a Complaint for breach of contract seeking $500,000 in damages based on the allegation that Wei breached his promise to provide financial support and money for college for her daughter, Zhang. *See* **Ex.C**, Dkt. 67-1, Mot. to Dismiss at 2-3. Liu, with the assistance of counsel, amended her complaint on October 29, 2019, to include a claim for defamation, and did not raise any allegations of rape or sexual assault. **Ex. C**, Dkt. 67-2, Mot. to Dismiss, Ex. A, *Liu et al. v. Wei, No. 2019 CA 005052 B*, Amended Complaint

---

[2] The court may take judicial notice of the D.C. Superior Court's January 11, 2024 Order and July 2, 2024 Omnibus Order in *Liu et al. v. Wei, No. 2019 CA 005052 B*. Fed. R. Evid. 201(b). Wei requested that the District Court take judicial notice of the same and incorporated these orders into his Response in Opposition to the Motion for a Rule 35 examination. *See* Dkt. 93, Def.'s Opp'n to Mot. to Compel Rule 35 Exam, attached hereto as **Ex. D**, at n.1.

[3] Lui made a point of arguing she had been pro se in the D.C. Superior Court. However, she was represented by multiple attorneys throughout the litigation, each of which withdrew from the case prior to final adjudication. **Ex. B**, SAC ¶ 17.

(October 29, 2019). In 2020, for the first time, Liu began to claim publicly and in the litigation that Wei sexually assaulted her. **Ex. A**, Hr'g T. 67:24-66:3; **Ex.C**, Dkt. 67-1, Mot. to Dismiss at 3-4. Four years later, she sought leave to amend the complaint a second time and only vaguely mentioned allegations of rape. *See* **Ex. C**, Dkt. 67-6, July 2 Omnibus Order at 13-18.

During the DC litigation, Plaintiffs moved to compel a DNA paternity test of Wei based on DC's analogue to Rule 35. **Ex. D**, Dkt. 93, Def.'s Opp'n to Rule 35 Mot. at 2-4. Unlike here, that litigation involved an allegation of defamation based on the statement that Charlotte was not his "biological daughter." **Ex. C**, Dkt. 67-6, July 2 Omnibus Order at 2, 6. Liu sought a genetic paternity test under the D.C. Superior Court's Rule 35 analogue, arguing, inter alia, paternity would be relevant to the allegedly defamatory statements Wei made calling Plaintiffs "fakes." **Ex. C**, Dkt. 67-5, Mot. to Dismiss, Ex. D, *Liu et al. v. Wei, No. 2019 CA 005052 B*, January 11, 2024 Order ("Jan. 11 Order") at 22. The court denied the motion.

The case culminated in an Omnibus Order issued July 2, 2024, which denied a motion for reconsideration on the motion for a genetic paternity test and granted Wei's motion for summary judgment, entered an order for summary judgment in Wei's favor, and closed the action. **Ex. C**, Dkt. 67-6, July 2 Omnibus Order at 1, 26.

## III.    PLAINTIFFS TAKE A SECOND BITE AT THE APPLE

hile the DC litigation had been progressing, Liu brought the instant action in 2021 against Defendant Ciping Huang alleging defamation related to alleged social media statements. **Ex. E**, Dkt. 1, Complaint. In December 2024, before the ink was dry on the judgment in Wei's favor in the DC Superior Court, Liu amended her Complaint in this action to include a single claim of defamation against Wei. **Ex. B**, SAC ¶¶ 94-99. The claim is based on a single social media posts and response to a comment to the same. *Id*. On July 6, 2024, four days after judgment was entered in the DC Superior Court, Wei allegedly tweeted (translated by Google Translate from Mandarin):

> They say if you spread a rumor, no matter how much effort you put in, it will be hard to completely clean it up. The CCP has, throughout its history, often deployed rumors [as a political tactic]. In the 1940s, they created rumors about Chiang Kaishek, and the book "The Pipe Dream of Nanking" played no small part. In recent years, people I've never met before claimed to know me. It's not just about tarnishing my reputation; they're requesting documents from [my] foundation, and it's clear that they are targeting the entire democracy movement. They even mobilized a large number of people to spread these rumors, and their sophistication has clearly increased. Recently, the court ruled against them, and there is no such alleged illegitimate daughter at all.

**Ex. B**, SAC ¶ 90. In response to a comment urging Wei to do a DNA test, Wei responded "Would you want a liar for a daughter? Throw in a fraudster mother." *Id*.

¶¶ 91-92. This tweet and response are the basis for the resent action against Wei. There is no direct statement challenging biological paternity at issue.[4]

Wei moved to dismiss the Complaint arguing both preclusion and failure to state a claim. **Ex. C**, Dkt. 67, Mot. to Dismiss. While this motion was being briefed, Plaintiffs moved for a Rule 35 Order to compel Wei to submit to a DNA paternity test (Dkt. 84), and Wei opposed the motion (**Ex. D**, Dkt. No. 93). The Court held a hearing on both the pending motions to dismiss by Wei and Co-defendant Huang, and the Motion for a Rule 35 examination. Because the motions to dismiss rested largely on the preclusive effect of the DC litigation, the District Court heard arguments and was presented with fact relating to the DC Superior Court action immediately prior to hearing the Rule 35 motion. *See generally*, **Ex. A**, Hr'g Tr.

With regard to the Rule 35 Motion, the District Court first held that the DC Superior Court's order denying an identical request for a medical examination was not preclusive. *Id.* 79:2-80:10. The court began its Rule 35 analysis by stating "Like all discovery rules, Rule 35 is to be accorded broad and liberal treatment in order to effectuate their purpose that civil trials in federal courts no longer need be carried on

---

[4] After the District Court entered an order granting the Rule 35 Motion, Wei served his answer and counterclaims. One counterclaim is for a declaratory judgment of parentage, which, under the controlling law (California), is a legal issue and will not turn on genetics. Should Lui attempt to raise this counterclaim (which was not before the District Court at the time it issued the Rule 35 Order in question), this argument will resoundingly fail.

in the dark. That's a Supreme Court case that stands for that proposition, *Hickman v. Taylor* 1947." *Id.* 80:19-23. It proceeded to reach the following conclusions:

> Now, first, the Court finds that the issue of defendant Wei's paternity of Charlotte whether Wei and Heather had sexual encounters or a sexual encounter and whether Wei sexually assaulted plaintiff Heather are all matters in controversy, and these matters are collectively a central issue to this defamation action. Social media posts from the defendants reference be it explicitly or by inference the nature and circumstances of the defendant Wei and the plaintiff Heather's relationship and previous interaction and Charlotte's paternity. Very many of the challenged statements made about the plaintiffs are about their character, actions, and conduct are framed by the assertion that the plaintiffs are lying that the defendant Wei is not Charlotte's biological father, that the defendant Wei did not sexually assault the plaintiff Heather, and indeed the defendant Wei did not even know the plaintiff Heather.
>
> Plaintiffs will ultimately have to prove that the challenged statements are false, which the defendants clearly dispute. Defendant casts the challenged statements as mere opinions, rhetoric, and hyperbole, but I have found that the statements are plausibly capable of truth or falsity and the plaintiffs will ultimately have to prove that and also prove that the statements were false.
>
> The question of Charlotte's paternity in this case is highly probative of several issues in this case, goes directly to Wei's claims that he never met, assaulted, or impregnated one of the plaintiffs and fathered the other. The plaintiffs' position on this controversy is not just a bare assertion.
>
> The plaintiffs have presented a 2018 e-mail from I think Mr. Robert Suettinger that substantiate their position on this controversy; i.e., that DNA testing will establish that Wei has a genetic link to the plaintiff Charlotte and may be her biological father.
>
> Second, the Court finds that there is good cause for physical examination of the defendant Wei in regard to the paternity issue. The 2018 e-mail that I just noted references and describes DNA evidence

but does not provide it. The plaintiffs have already exhausted other methods by which they could obtained admissible evidence in support of their position on the controversy having subpoenaed the person who sent that e-mail and also subpoenaed 23andMe for this information and done so to no avail

But even if they had been successful there would remain real questions and doubts as to the admissibility of the information that they had subpoenaed. Here the plaintiffs seek a minimally invasive DNA test, be it a cheek swab or a blood draw or a hair sample in order to obtain physical and forensic evidence for which they have a great need in discovery.

That is to say that the DNA testing that they seek is proportional to their needs under the rules of discovery.

The plaintiffs have adequately shown good cause for a Rule 35 physical examination so their motion shall be granted.

*Id*. 81:6-83:7.

On July 21, 2025, the Court entered a written Order memorializing its ruling and directing the parties to submit by July 25, 2025, a proposed order addressing the time, place, manner, and scope of the DNA test, as well as a proposed amended scheduling order (collectively with the oral rulings the "Rule 35 Order"). **Ex. F**, Dkt. 96, July 21, 2025 Order.

On July 25, 2025, Wei moved for an order staying enforcement of the Rule 35 Order pending the outcome of this Petition for Writ of Mandamus or, in the alternative, extending the deadline for enforcement until September 15, 2024,[5] in

---

[5] The parties have since agreed that the earlies the paternity test would take place is the end of September, but no date has been selected.

order to have sufficient time to seek relief from this Court. **Ex. G**, Dkt. 98, Mot. to Stay. The District Court has not ruled on this motion at the time of filing this writ.

**STATEMENT OF REASONS WHY THE WRIT SHOULD ISSUE**

A writ of mandamus "is appropriately issued . . . when there is 'usurpation of judicial power' or a clear abuse of discretion[.]" *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964). To demonstrate the usurpation of power or clear abuse of discretion, the petitioner must meet the following conditions: (1) "the party seeking issuance of the writ must have no other adequate means to attain the relief [it] desires"; (2) "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances"; and (3) the petitioner must demonstrate that the "right to issuance of the writ is clear and indisputable." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004) (brackets, citations, and internal quotation marks omitted).

Wei satisfies all three conditions. First, Wei has no other adequate means to attain the relief he desires, because a discovery order may not be appealed as of right, nor may it be the subject of an interlocutory appeal. Second, the writ is appropriate under the circumstances because the Rule 35 Order is irreversible; once he has been subsect to a medical examination and his privacy invaded, no court order on admissibility of the derivative evidence can change that. Third, the right to a writ is clear and indisputable because the Rule 35 Order greatly exceeded the permissible

scope of Rule 35 in ordering testing. Indeed, the Order applies the incorrect legal standard in multiple respects, is based on an incorrect understanding of the facts, accepts Plaintiffs' conclusory allegations in lieu of facts, and conflates Wei with Co-Defendant Huang. Moreover, the Rule 35 Order gave no consideration of serious privacy interests at stake for Wei, his history of persecution and harassment, and his concern of CCP involvement. As such, a writ should issue here.

## I. WEI HAS NO OTHER ADEQUATE MEANS TO SEEK REVIEW AND PREVENT AN UNWARRANTED INVASION OF HIS PRIVACY

"Controversies over the allowance of discovery are by their very nature short-lived because reversal on appeal cannot undo the disclosures." *In re Pruett*, 133 F.3d 275, 278 (4th Cir. 1997). Wei cannot challenge a Rule 35 discovery order under the collateral order doctrine. *Doe v. Sidar*, 93 F.4th 241, 246 (4th Cir. 2024) ("We thus hold that the category of orders at issue—those denying a request for a physical or mental examination—falls outside the collateral order doctrine."). Nor may he challenge the order though an interlocutory appeal. *In re The City of New York*, 607 F.3d 923, 933 (2d Cir. 2010) ("First, it is clear that the City cannot challenge the District Court's [Rule 35] order by means of an interlocutory appeal."). But this Court may issue a writ to vacate an order of the district court which "authorized the oppressive use of Rule 35 of the Federal Rules of Civil Procedure." *U. S. Bd. of Parole v. Merhige*, 487 F.2d 25, 30 (4th Cir. 1973). As such, a petition for writ of mandamus is the only means to seek review.

## II. THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES

A writ of mandamus is appropriate where, the court finds that "unless we act promptly to rectify the district court's error, petitioner's right will be irretrievably lost." *In re Grand Jury Subpoenas, Apr., 1978, at Baltimore*, 581 F.2d 1103, 1107 (4th Cir. 1978) (citing cases). There is no undoing a medical examination. As discussed *infra*, it is the act of being forced to provide his genetic information to a person that he believes is acting on behalf of the foreign regime that imprisoned and harassed him for his entire adult life is a gross invasion of privacy that will be irretrievably lost if Wei must proceed. Given these circumstances, a writ is appropriate.

## III. THE RIGHT TO ISSUANCE IS CLEAR AND INDISPUTABLE

Federal Rule of Civil Procedure 35(a) provides:

(1) The court where the action is pending may order a party whose mental or physical condition--including blood group--is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

**(2) *Motion and Notice; Contents of the Order.*** The order:

> **(A)** may be made only on motion for good cause and on notice to all parties and the person to be examined . . . ;

Fed. R. Civ. P. 35(a). Therefore, a Rule 35 examination requires that the movant meet both an "in controversy" and "good cause" requirement. *Schlagenhauf*, 379 U.S. at 118. Neither requirement are "mere formalities." *Winters v. Travia*, 495 F.2d 839,

[841](#) (2d Cir. 1974) (granting petition for writ of mandamus where court ordered a rule 35 medical examination of a plaintiff). Nor can either element be met

> [M]et by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant.

*Schlagenhauf*, [379 U.S. at 118](#).

Here, the Rule 35 Order contains errors at every step of the analysis. First, the Rule 35 Order appears to have applied a lower, Rule 26-like relevance standard to determine discoverability. Second, it incorrectly determined that genetic paternity was "in controversy" based seemingly on Plaintiffs' claims against a different defendant. Third, the Rule 35 Order missed the mark on good cause by allowing the conclusory allegations of the Plaintiff to overcome the legal presumption of parentage here, despite having not exhausted other means to obtain information about Zhang's genetic parent. Fourth and finally, the District Court abused its discretion by wholly ignoring the serious danger the use of a Rule 35 Order poses in this context. Wei reasonably believes Liu is using this litigation to harass him in support of CCP aims to discredit his pro-democracy work. This warrants a writ to prevent the abuse of the legal system.

**A.    The District Court Failed to Recognize the Rule 35 Imposes a Higher Standard than Rule 26's Discoverability Standard**

The burden on the moving party to satisfy Rule 35 is higher than for discovery under Rule 26. *Fraternal Ord. of Police, Lodge No. 5 v. City of Philadelphia,* 812 F.2d 105, 113 (3d Cir. 1987) (noting that Rule 35 requires a "higher burden for discovery of medical information than for discovery generally);*United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) ("[T]he Federal Rules of Civil Procedure impose a higher burden for discovery of reports of the physical and mental condition of a party or other person than for discovery generally."). Rule 35 is not to be treated as any other rule of discovery; relevance and burden are not the only factors in issuing an order mandating medical examination.

Nonetheless, the Rule 35 Order begins its analysis by stating: "Like all discovery rules, Rule 35 is to be accorded broad and liberal treatment in order to effectuate their purpose that civil trials in federal courts no longer need be carried on in the dark. That's a Supreme Court case that stands for that proposition, *Hickman v. Taylor*[, 329 U.S. 495] (1947)." **Ex. A**, Hr'g T. 80:19-23. But *Hickman* is not a Rule 35 case, nor does it consider the discoverability of private medical information or compelling medical testing. *Hickman* involves the discovery of books and records and the use of written discovery. *See generally* 329 U.S. at 497-99. Nothing about the opinion considered the distinctive nature of Rule 35. And even if the intent of *Hickman* was to announce a uniform standard for Rule 26 and Rule 35, the Supreme

Court's subsequent decision in *Schlagenhauf* certainly disposes of any such interpretation.

Although the Rule 35 Order purported to consider the twin issues of "in controversy" and "good cause" its analysis was flawed from the start. The Court committed a legal error by reducing the burden on Plaintiffs and functionally treating the invasion of Wei's privacy as one as the same as the burden of producing phone records or bank statements. As discussed with regard to the elements of Rule 35, it is apparent that this lesser burden infected the analysis at each step.

### B. Genetic Paternity is Not in Controversy Where the Only Claim Against Wei is for Defamation for Calling Plaintiffs False and Fraudulent in Connection With Their Allegations of Rape and Breach of Contract

Plaintiffs' Motion is under Rule 35(a)(1), which provides that the court may "order a party whose mental or physical condition… is in controversy" to submit to a physical or mental examination. Fed. R. Civ. P. 35(a)(1). The in controversy prevents limits "sweeping examinations of a party who **has not affirmatively put into issue his own mental or physical condition**," and "to hold otherwise would mean that such examinations could be ordered routinely." *Schlagenhauf*, 379 U.S. at 121-122 (emphasis added). Nor is "mere relevance" sufficient. *Id*. at 118. For example, a psychological evaluation is certainly relevant to a claim for emotional distress, but a party's psychological condition is **not** considered "in controversy" for the same reason. *Nathai v. Florida Detroit Diesel-Allison, Inc*., 268 F.R.D. 398, 400

(M.D. Fla. 2010) ("a plaintiff does not put his or her mental condition in controversy simply by seeking damages based on emotional distress."); *Bowen v. Parking Auth. of City of Camden*, 214 F.R.D. 188, 194-95 (D.N.J. 2003) (denying motion for Rule 35 psychological evaluation even when plaintiff has made a claim for emotional distress and disclosed testimony from his treating physician regarding the plaintiff's medical and psychological condition).

**Biological paternity is not "in controversy" with respect to the claims against Wei.** Plaintiffs' claim rests on Wei's post-summary judgment victory tweet, in which he allegedly states:

> They say if you spread a rumor, no matter how much effort you put in, it will be hard to completely clean it up. The CCP has, throughout its history, often deployed rumors [as a political tactic]. In the 1940s, they created rumors about Chiang Kaishek, and the book "The Pipe Dream of Nanking" played no small part. In recent years, people I've never met before claimed to know me. It's not just about tarnishing my reputation; they're requesting documents from [my] foundation, and it's clear that they are targeting the entire democracy movement. They even mobilized a large number of people to spread these rumors, and their sophistication has clearly increased. Recently, the court ruled against them, and there is no such alleged illegitimate daughter at all.

**Ex. B**, Dkt. 63, SAC ¶ 90. In response to a comment on the post urging Wei to do a DNA test, Wei responded "Would you want a liar for a daughter? Throw in a fraudster mother." *Id*. ¶¶ 91-92. Wei's statement is not a denial of genetic paternity. It is suggestive of ties between Plaintiffs and the CCP and accuses Liu of being a fraud and Zhang being a liar in context with the litigation in DC Superior Court, in

which Liu and Zhang accused Wei of rape and breach of contract for allegedly promising to financially support Zhang. But the statement has nothing to with denying genetic paternity.

Stated another way, the result of the paternity test-whether positive or negative, does not render any single aspect of Wei's alleged statement false. The CCP can still be targeting Wei. The CCP could still have mobilized people to spread rumors (here, about being a rapist, which is the subject of Wei's counterclaim). Biological paternity has no bearing on the fact of Wei's victory in DC Superior Court relating to parentage, which is a legal concept, not a genetic one.

At most, a positive paternity test would show Wei and Liu had sexual intercourse. This does not prove consent or rape. Indeed, Lui will surely argue a negative test does not disprove rape. Nor would the results of a paternity test have any bearing on Lui or Zhang's support of the CCP or whether Wei agreed to financially support Zhang. And if "mere relevance" is not enough to support the use of Rule 35, *see Schlagenhauf*, 379 U.S. at 118, a potential for tangential relevance certainly does not make genetic paternity "in controversy." Caselaw regarding emotional distress is directly salient here—under *Nathai* and *Bowen* a party's psychological condition could certainly be said to be relevant to a claim for emotional distress. But both courts were clear that relevance is not enough for in controversy.

Despite the limited nature of the defamation claim against Wei,[6] the District Court accepted Plaintiffs' insistence that parentage was relevant. Nowhere does the Rule 35 Order consider Wei's alleged tweet in isolation. *See generally* Ex. A. Rather, it held:

> Social media posts from the defendants reference be it explicitly or by inference the nature and circumstances of the defendant Wei and the plaintiff Heather's relationship and previous interaction and Charlotte's paternity. Very many of the challenged statements made about the plaintiffs are about their character, actions, and conduct are framed by the assertion that the plaintiffs are lying that the defendant Wei is not Charlotte's biological father, that the defendant Wei did not sexually assault the plaintiff Heather, and indeed the defendant Wei did not even know the plaintiff Heather.

**Ex. A**, H'rg T. 81:11-21. The District Court analyzed the matter of controversy as Wei and Huang were co-extensive. In so doing, it functionally concluded that if an issue is "in controversy" as to one party, it is "in controversy" as to all parties. But undersigned counsel has found not authority in any federal court to support this conclusion.

---

[6] After District Court issued the Rule 35 Order, Wei filed his Answer and Counterclaims. The counterclaims were not before the court at the time of ruling, so cannot bear on the "in controversy requirement." Wei's counterclaims bring claims for defamation and false light for calling him a rapist, abuse of process, and a declaratory judgment action for legal parentage based strictly on the fact that Mr. Zhang is the presumptive legal parent and did not challenge paternity within the specific mandatory time limit, so he is the legal parent. None of these claims place genetic paternity at issue.

While there is no caselaw directly on point, cases regarding the inability to seek a Rule 35 examination of a related non-party are instructive. In *Young v. United States*, 311 F.R.D. 117, 119–20 (D.N.J. 2015), two parents brough a claim on behalf of their minor child for medical malpractice. *Id*. at 119. The defendants raised a causation defense based on the child's genetics. *Id*. The defendant's expert geneticist explained that the child had a genetic abnormality, and that the genetic abnormality would explain the child's physical and mental injuries if the parents did *not* have the same abnormality. *Id*. at 120. Thus, genetic testing of the parents, who had brought the suit on behalf of their child over the cause of that child's injuries had the potential to be dispositive. *Id*. But because the parents were not the named party, the court denied the motion for a Rule 35 genetic test. *Id*. at 121.

Likewise, in *Dunford v. Rolly Marine Serv. Co*., the court held "authority has been provided for the proposition that a Rule 35 examination can ever be applied to a non-party witness, even if that witness is an officer of a party." 233 F.R.D. 635, 637 (S.D. Fla. 2005). There, the plaintiff sought a deposition of an officer of the defendant corporation and relevant fact witness. Defendant sought a protective order arguing her medical condition rendered not competent to testify, and plaintiff sought a Rule 35 medical examination to challenge the protective order. *Id*. at 636-37. Although the officer's cognitive health was central to obtaining relevant testimony, the Court would not issue a Rule 35 Order.

But Wei is a party. Plaintiffs will hang their hat on this fact no doubt. But for the purpose of the "in controversy" requirement, that is not enough. In relying on the claims against Huang to create the controversy, Wei is no different than a non-party witness. It is plain that the District Court could not have ordered a genetic test of Wei before December 2, 2024, which is when he was first added as a defendant. To allow the Rule 35 discovery now, based on the claims against *Huang*, creates an absurd incentive to plead more parties into an action simply to open the door on invasive Rule 35 discovery.

### C. Plaintiffs Cannot Establish Good Cause in Light of the Legal Presumption Mr. Zhang is Defendant Zhang's Father

"Good cause" is not the same as "in controversy." "Although some courts seem to have collapsed the two Rule 35 requirements, they are distinct and implicate different concerns" *Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs*, 315 F.R.D. 612, 616 (N.D. Fla. 2016) (citing *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 165, 165 n. 3 (N.D. Cal. 2013)). Therefore, it is inappropriate to revisit whether the genetic paternity test is relevant to any claim. Rather, it should consider different factors such as "the possibility of obtaining the desired information by other means." *Id.* at 616 (citing *Marroni v. Matey*, 82 F.R.D. 371, 372 (E.D. Pa. 1979); *Storms v. Lowe's Home Centers, Inc.*, 211 F.R.D. 296, 298 (W.D. Va. 2002) (finding that even if Rule 35 applied to vocational assessments, no good cause existed in part because "Plaintiff has provided Lowe's with a copy of all medical records, a copy of the

report from his vocational expert, his tax records, and all other discoverable material requested[.]")).To that end, the party seeking a Rule 35 examination must make a showing that "the information they seek cannot be obtained by other discovery techniques. Until other methods are attempted . . . the "discriminating application" of Rule 35 demanded by the Court requires [denial of] the motion." *Marroni*, 82 F.R.D. at 372.

Here, a basic place would be to start by demonstrating that Zhang's legal presumptive father, Mr. Zhang, is not her biological father. In *Minnesota Life Ins. Co. v. Jones*, 771 F.3d 387, 388 (7th Cir. 2014) (Posner, J.), the Seventh Circuit affirmed the district court's order denying a Rule 35 genetic paternity test in an action to determine the beneficiaries (surviving children) of a deceased man's estate. Specifically at issue was whether plaintiff was the child of the deceased and, therefore, whether he was entitled to life insurance proceeds. In grappling with the issue of paternity, Judge Posner held:

> Rule 35(a) of the Federal Rules of Civil Procedure authorizes a district court to order, upon a showing of good cause, a physical examination of a litigant whose physical condition is at issue in the litigation. A DNA test for paternity is quick, noninvasive, painless—and conclusive. Given the conflicting evidence of [decedent] Lenord's parentage of [contested son] Quincy, ordering Quincy to submit to a DNA test would seem a no-brainer.

> Not so fast. The Illinois Parentage Act creates a presumption that a man is the natural father of a child if, so far as bears on this case, he and the child's biological mother have signed an acknowledgment of paternity or, equivalently, of parentage. Both Lenord and Quincy's mother had

signed the 1996 acknowledgment of Lenord's paternity.

. . .

[T]he presumption could well be deemed conclusive in a case such as this.

*Minnesota Life Ins. Co.*, 771 F.3d at 389-390. There, the court ultimately ruled that an allegation that someone is not a genetic parent should not be enough to override the laws of parentage. *Id.* ("In effect [the sister] is arguing that all you need in order to require a DNA test of a relative (or anyone else) who is ahead of you in line for an inheritance is an affidavit that the relative is *not* ahead of you, because he or she is a phony heir and you're a genuine one."). As such denial of the Rule 35 motion was appropriate. *Id.*

The same reasoning should apply here. Mr. Zhang is the legal parent of Zhang. It is not disputed that Liu and Mr. Zhang were married at the time of conception and birth, and Mr. Zhang is listed on Zhang's birth certificate. *See* **Ex. C**, Dkt. 67-5, Jan. 11 Order at 3. Mr. Zhang has never contested parentage. **Ex. D**, Dkt. 93, Def.'s Opp'n to Rule 35 Mot at 10. Thus, Mr. Zhang is presumed to be Zhang's father absent conclusive evidence to the contrary. *Id.* (citing Md. Code, Fam. Law § 5–3A–06(a)). So that means that Plaintiffs have sought an order to test Wei for paternity even though, under the law, Mr. Zhang is here parent. Disproving the genetic paternity of the legal parent—if even possible—is a necessary precursor to dragging a different

man into court and demanding his DNA before he has even answered the Second Amended Complaint. *Id.*

Liu's mere allegation that Wei submitted to a 23andMe test that she no longer has a copy of is not enough. The District Court incorrectly opined, "[t]he plaintiffs have already exhausted other methods by which they could obtained admissible evidence in support of their position on the controversy having subpoenaed the person who sent that e-mail and also subpoenaed 23andMe for this information and done so to no avail." **Ex. A**, Hr'g T. 82:17-22. Not so. Liu has **never** sought to compel production of those documents. *Id.* at 69:17-23. This is why mere allegations are insufficient. If Plaintiffs are to demand a DNA test on the basis that this is the only option, the Court must put them to their proof.

The law presumes that Mr. Zhang is the father of Zhang. Full stop. Plaintiffs have access to information that could potentially rebut that presumption by either testing of Zhang or enforcing her subpoena against 23andMe, yet Plaintiffs have done nothing. As such, granting the Rule 35 motion was a clear and obvious error.

### D. The Court Abused its Discretion By Ignoring Wei's Reasonable and Credible Concerns the CCP Seeks to Invade His Privacy to Harass Him for His Civil Rights Work

When considering a motion for physical examination under Rule 35(a), the Court has such broad discretion that "even upon a showing that the condition is in controversy and that good cause exists for the examination, the trial judge may still

refuse to issue the order." *Neuman v. Neuman*, 377 A.2d 393, 398 (D.C. 1977) (collecting cases); *Hardy v. Riser*, 309 F. Supp. 1234, 1241 (N. D. Miss. 1970) ("Even when the 'good cause' and 'in controversy' requirements are met, it is still in the sound discretion of the trial court whether to order the examination"); *Curtis v. Express, Inc.*, 868 F.Supp. 467, 468 (N.D.N.Y. 1994) ("Even if good cause is shown [under Rule 35(a)(2)(A)], it is still within the court's discretion to determine whether to order an examination."). In using its discretion, the court may consider the unique context of a case and specifically, whether there is a "distinct danger of Rule 35 being used as a sort of retaliatory measure." *Winstead*, 315 F.R.D. at 617.

That "distinct danger" is not only present here, it has been expressly investigated by the United States Congress and recounted in numerous reputable media outlets. It is a well-documented phenomenon that the CCP uses a variety of methods, from social media to the U.S. court system to target and harass Chinese dissidents. *See, e.g.* Foreign Abuse of U.S. Courts: Hearing Before the H. Comm. On the Judiciary, 119th Cong. (July 22, 2025), *available at* https://judiciary.house.gov/committee-activity/hearings/foreign-abuse-us-courts-0 (last visited August 7, 2025) (summary states "The hearing . . . , will explore how the [CCP] currently utilizes U.S. courts to silence critics . . . .".); Tsai, M., "He escaped China. Harassment followed him to a New York courtroom", RADIO FREE ASIA (Mar. 19, 2025) *available at* https://www.rfa.org/english/special-

reports/china-lawfare-transnational-repression/ (last visited August 7, 2025); A. Martinez, "Chinese hacking scheme focused on harassing dissidents, leaked documents show" National Public Radio (Feb. 23, 2024), *available at* https://www.npr.org/2024/02/23/1233355132/chinese-hacking-scheme-focused-on-harassing-dissidents-leaked-documents-shows (last visited August 7, 2025).

The CCP is known to engage in "lawfare," or the "systematic employment of judicial proceedings and legal frameworks to accomplish strategic military or political goals. This strategy encompasses the manipulation of legal processes to undermine, discredit, or impose substantial procedural and financial obligations upon adversaries through judicial mechanisms and related legal instruments." Foreign Abuse of U.S. Courts: Hearing Before the H. Comm. On the Judiciary, 119th Cong. (July 22, 2025), Testimony of Julian G. Ku, House Committee on the Judiciary, Subcommittee on Courts, Intellectual Property, Artificial Intelligent, and the Internet: Why the U.S. Should Harden Its Defenses Against China's Asymmetric Lawfare, *available at* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/ https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/ evo-media-document/ku-testimony.pdf (last visited August 7, 2025); *accord* Jill I. Goldenziel, Law as a Battlefield: The U.S., China, and the Global Escalation of Lawfare, 106 CORNELL L. REV. 1085, 1097 (2021); Julian Ku, China's Successful Foray Into Asymmetric Lawfare, LAWFARE (Sept. 29, 2021), *available at*

https://www.lawfaremedia.org/article/chinassuccessful-foray-asymmetric-lawfare

(last visited August 7, 2025).

> According to a scholar at the Foundation for Defense of Democracies,
>
> [I]nside the United States, the Chinese Communist Party uses the American legal system to advance Beijing's agenda, punish its opponents, and neutralize US defenses – benefiting from the reality that China's centralized, opaque system allows it to out-resource competitors in courts and Congress, coopt key stakeholders, and manipulate information. This is a threat to US security and prosperity. Chinese abuse of the US legal system takes offensive and defensive forms. It includes bids to shape US policy as well as to impose costs on adversaries in US courts. It features evasions of US law as well as influence campaigns meant to ensure that such evasions remain possible. Across the board, Beijing's manipulation benefits from the reality that Chinese entities have the same access to US courts, law firms, and lobbyists as any others. And Beijing's campaign is fueled by a deliberate Chinese government program that provides the resources and direction necessary to turn the US system against itself.

Foreign Abuse of U.S. Courts: Hearing Before the H. Comm. On the Judiciary, 119th Cong. (July 22, 2025), Testimony by Emily de La Bruyere Co-founder, Horizon Advisory Senior Fellow, Foundation for Defense of Democracies *available at* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/de-la-bruyere-testimony.pdf (last visited August 7, 2025).

Wei is precisely the type of dissident that the CCP targets. Even after leaving China, he has been subject to a deluge of harassment in an effort to discredit his advocacy. He genuinely believes Lui is part of this effort. The fact that she fought

him in D.C. Superior Court for five years, lost, and then sued him months later for tweeting about his legal victory adds fuel to this credible fire.[7] This context, or lack thereof, is central to the need of a writ to rescind the Rule 35 Order. Wei has long believed that Liu's allegations of rape are part of a broader effort by the CCP to harass and silence him. So, even if there were good cause and even if the issue were in controversy, the District Court should have denied the Rule 35 motion based on the intense psychological burden on Wei. In this, Wei disagrees with Judge Posner – a forced medical test where the potential relevance to the case is minimal, but the emotional burden is significant, is not actually "noninvasive." It is for these very reasons that Wei pursues a petition for a writ of mandamus from this Court.

## CONCLUSION

This case is not a situation where Wei takes issue with the manner in which the District Court has balanced factors for relevancy and burdensomeness. This case presents important legal issues at every aspect of a Rule 35 analysis, all of which amounts to an "oppressive use" of Rule 35. As such, the Court should issue a writ directing that the District Court withdraw its Order and deny Plaintiffs' motion for a Rule 35 paternity test of Wei.

---

[7] Wei has counterclaimed against Lui for, among other things, abuse of process based on bringing the underlying litigation.

Dated this 8th day of August, 2025

                              Respectfully submitted,


                              /s/ *David Barger*
                              David G. Barger (MD Bar# 14716)
                              Greenberg Traurig LLP
                              1750 Tysons Blvd.
                              Suite 1000
                              McLean, VA 22102
                              Tel:  (703) 749-1300
                              Email:  bargerd@gtlaw.com
                                      anglew@gtlaw.com

# CERTIFICATE OF SERVICE

I certify that on August 8, 2025, Petitioner's Petition of Writ of Mandamus

was served by email (with written consent) on the following persons at the email

addresses shown:

Times Wang
Farra & Wang PLLC
twang@farrawang.com
*Attorney for Respondents Huaizhao Liu and Charlotte Zhang*


John P. Rowley III (admitted *pro hac vice*)
Adriaen M. Morse Jr. (Md Bar No.18106)
SECIL Law PLLC
jrowley@secillaw.com
amorse@secillaw.com

*Counsel for Respondent Ciping Huang*


/s/ *David Barger*
David G. Barger