UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

IN RE JINGSHENG WEI,

Petitioner.

On petition for a writ of mandamus from the
United States District Court for the District of Maryland
Case No. 23-cv-02134
Hon. Matthew J. Maddox

Brief in Opposition by Plaintiff-Respondents
Huaizhao Liu and Charlotte Zhang

Times Wang
Adam Farra
FARRA & WANG PLLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
twang@farrawang.com
afarra@farrawang.com
(202) 505-5990

*Counsel for Huaizhao Liu
and Charlotte Zhang*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................... ii

INTRODUCTION...............................................................................1

STATEMENT OF THE ISSUE............................................................3

STATEMENT OF THE CASE............................................................ 4

SUMMARY OF ARGUMENT ..........................................................10

ARGUMENT ...................................................................................12

   I.   WEI HAS OTHER ADEQUATE MEANS TO ATTAIN THE RELIEF HE SEEKS..............................................................................................12

   II.  THE RIGHT TO ISSUANCE OF THE WRIT IS NEITHER CLEAR NOR INDISPUTABLE. ..................................................................... 13

   III.   IT IS NOT APPROPRIATE TO ISSUE THE WRIT IN THESE CIRCUMSTANCES........................................................... 22

CONCLUSION.................................................................................24

CERTIFICATE OF COMPLIANCE ................................................25

CERTIFICATE OF SERVICE .........................................................26

# TABLE OF AUTHORITIES

Page(s)

Cases

*Strong v. Wisc.*,
  07-C-086-C, 2007 WL 5445863 (W.D. Wis. May 25, 2007) .......................... 15, 18

*Allied Chem. Corp. v. Daiflon, Inc.*,
  449 U.S. 33 (1980) ........................................................................ 11

*Ashby v. Mortimer*,
  329 F.R.D. 650 (D. Idaho 2019) ............................................... 15, 16, 17

*Bennett v. City of Bos.*,
  54 F.3d 18 (1st Cir. 1995) ................................................................ 13

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004) ...................................................................... 1, 11

*D'Angelo v. Potter*,
  224 F.R.D. 300 (D. Mass. 2004) ................................................... 15, 17

*In re Beard*,
  811 F.2d 818 (4th Cir. 1987) ............................................................ 10

*In re Braxton*,
  258 F.3d 250 (4th Cir. 2001) ............................................................ 13

*In re Cooper Tire & Rubber Co.*,
  568 F.3d 1180 (10th Cir. 2009) ........................................................ 23

*In re Grand Jury Subpoenas, Apr., 1978, at Baltimore*,
  581 F.2d 1103 (4th Cir. 1978) ..................................................... 10, 22

*In re Insurers Syndicate for Joint Underwriting of Medico-Hosp. Pro. Liab. Ins.*,
  864 F.2d 208 (1st Cir. 1988) ............................................................ 23

*In re Strickland*,
   87 F.4th 257 (4th Cir. 2023) ............................................................ 14, 22

*In re Underwriters at Lloyd's*,
   666 F.2d 55 (4th Cir. 1981) ............................................................. 4, 11

*Kaufman v. Edelstein*,
   539 F.2d 811 (2d Cir. 1976) ................................................................. 13

*Kerr v. U. S. Dist. Ct. for N. Dist. of California*,
   426 U.S. 394 (1976) ................................................................ 10, 11, 12, 13

*Leonard v. Martin*,
   38 F.4th 481 (5th Cir. 2022) ............................................................ 14, 18

*McGrath v. Nassau Health Care Corp.*,
   209 F.R.D. 55 (E.D.N.Y. 2002) ............................................................... 17

*Mid-Am.'s Process Serv. v. Ellison*,
   767 F.2d 684 (10th Cir. 1985) ................................................................ 12

*Minnesota Life Ins. Co. v. Jones*,
   771 F.3d 387 (7th Cir. 2014) ................................................................. 21

*Ray v. Park*,
   2021 WL 4950842 (W.D. Mo. Sept. 24, 2021) ....................................... 15, 16, 17

*Rousseau v. John Boyd Coates, III, M.D.*,
   2019 WL 12323324 (D. Vt. Sept. 12, 2019) ................................................ 15

*Schlagenhauf v. Holder*,
   379 U.S. 104 (1964) ...................................................................... Passim

Rules

Federal Rule of Civil Procedure 35 ............................................................ Passim

**INTRODUCTION**

The writ of mandamus—"one of the most potent weapons in the judicial arsenal"—is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004).[1] The remedy is justified only where there are "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *Id.*

This case does not come close to meeting that high bar. The petition merely re-litigates a discovery dispute in a civil defamation suit. The petitioner Jingsheng Wei raped Huaizhao "Heather" Liu, who became pregnant with Charlotte Zhang. Years later, when news of Wei's rape of Heather and parentage of Charlotte started coming to light, Wei and his longtime assistant, Ciping Huang, denied it and made over 1,200 defamatory statements about Heather and Charlotte. These included calling Heather "a prostitute," a "slutty girl," and characterizing the rape as "a one-night stand," calling both Heather and Charlotte liars and a mother-daughter team of scam artists, and posting Charlotte's birth certificate to social media, claiming that the birth certificate's listing of Heather's then-husband as Charlotte's father corroborates that Heather and Charlotte are scam artists.

---

[1] Unless otherwise specified, all internal quotation marks, citations, and alterations are omitted from quotations throughout the brief.

Heather and Charlotte sued Wei and Huang for defamation. The district court denied the motions to dismiss. Wei counterclaimed, alleging that he "has no recollection of interacting with [Heather] or of having any sexual encounter with her during his trip to Los Angeles in March 2000, and denies the same." In discovery, Heather and Charlotte sought a paternity test of Wei—because whether Wei is Charlotte's biological father is probative of (among other things) whether Wei had a sexual encounter with Heather, whether Wei is Charlotte's biological father, whether Wei's denials are truthful, and whether Heather and Charlotte are a mother-daughter team of scam artists looking to extort Wei with a false story about Wei raping Heather and fathering Charlotte. Wei fought the paternity test. Heather and Charlotte moved to compel it. The district court held a hearing about it. At the end of the hearing, the district court carefully determined that the requirements of Federal Rule of Civil Procedure 35 (which authorizes genetic tests of a party) were met and ordered Wei to submit to the paternity test.

Wei's petition to undo this unremarkable discovery order fails all the prerequisites for issuing mandamus relief. Wei has other adequate means to obtain relief: he can challenge the admissibility of the paternity test's result, he can use the protective order to shield disclosure of the result, and if his objection is to having to submit to the test at all, he can decline compliance with the district court's order

and appeal the contempt order. Wei has not shown that issuance of the writ is clear and undisputable: the district court's careful balancing under Rule 35 was correct, and even if this Court would have conducted the balancing differently, mandamus is never appropriate for mere error correction. Finally, even if the first two requirements of mandamus were met, the circumstances do not merit the Court unleashing the writ of mandamus against the hardworking district judge in this case. While Wei "believes" that this suit is part of an effort by the Chinese Communist Party to destroy his reputation, his conspiracy theories are not fact. Heather and her trial counsel are themselves Chinese human rights writers and activists.[2] They are not pawns of the Chinese Communist Party.

The petition should be denied.

## STATEMENT OF THE ISSUE

"The rule is firmly and universally established that mandamus cannot be used to challenge ordinary discovery orders." *In re Underwriters at Lloyd's*, 666 F.2d 55, 58 (4th Cir. 1981). The question in this case is whether the Court should issue a

---

[2] *See* Yongmei Cai and Huaizhao "Heather" Liu, 10 YEARS OF MARCHING FOR FREEDOM: HONG KONG (2003 – 2013) (published 2012), https://searchworks.stanford.edu/view/10250782; United Nations Human Rights Council, Geneva Summit for Human Rights and Democracy, "My Father's Legacy: Fighting for Democracy in China with Times Wang" (Feb. 18, 2025) https://genevasummit.org/speech/my-fathers-legacy-fighting-for-democracy-in-china/.

writ of mandamus to reverse the district court's order granting a motion to compel a paternity test of one of the defendants under Federal Rule of Civil Procedure 35, when the district court found that the issue of paternity was "a central issue to this defamation action."

## STATEMENT OF THE CASE

In March 2000, Wei, a prominent Chinese democracy activist, sexually assaulted Heather. *See* Dkt. 10-3 at 4.[3] Because of the assault, Heather became pregnant with Charlotte. *Id.* at 5. The rape traumatized Heather and destroyed her marriage. But she tried to move on, living her life and raising her daughter. *Id.* at 5.

After public reports (not sanctioned by Heather or Charlotte) about Wei fathering Charlotte began to surface, Heather received an outreach from Robert Suettinger, an associate of Wei. *Id.* at 5. On Wei's behalf, Suettinger asked Heather to provide DNA samples to establish paternity. *Id.* She complied. *Id.* Suettinger confirmed to Heather that Charlotte was Wei's daughter, apparently relying on a service provided by 23andMe (https://www.23andme.com/compare-dna-tests/). *Id.*; Case No. 23-2134, Dkt. 84-4 (D. Md. May 16, 2025) (R. Suettinger email to H. Liu: "Just this afternoon I received the results of both test kits from the laboratory,

---

[3] Page references are to the ECF pagination.

and they prove conclusively (50% DNA matching) that [Charlotte] is his daughter.").

Wei subsequently made a variety of commitments and promises to Heather, but the communications broke down and Heather brought suit against Wei in the Superior Court for the District of Columbia for breach of contract and defamation. *See* Dkt. 10 at 6; Case No. 2019-CA-005052-B (D.C. Super. Ct.). Ultimately, in July 2024, the D.C. Superior Court entered summary judgment in Wei's favor, while Heather and Charlotte were proceeding *pro se*. *See* Dkt. 10 at 6. During those proceedings, and also while Heather and Charlotte were proceeding *pro se*, the D.C. Superior Court rejected their motion to require that Wei take a DNA test. Initially, it did so because, in its view, a provision of D.C. family law barred the test. Dkt. 10-4 at 88. It later realized that was erroneous given that that provision cited only applied to family law proceedings to determine parentage, which that case was not, *see id*. at 88-9, but it nevertheless declined to require a DNA test for the same substantive reason. *Id*. at 90 (reasoning that D.C.'s version of Rule 35 "should not be used in place of a properly laid out statutory process for establishing paternity"). In so doing, it did not consider the numerous federal cases ordering paternity tests under Rule 35 outside the family law context.

While the D.C. Superior Court action was pending, Ciping Huang—the Executive Director of the Wei Jingsheng Foundation and Wei's close confidant—launched a campaign beginning in September 2019 of harassment, intimidation, and disinformation against Heather and Charlotte. *See* Dkt. 10 at 6. Huang obsessively made over 1,200 statements about Heather and Charlotte in public on social media. She called Heather "a prostitute," *id.* at 8, a "slutty girl," *id.* at 8 and 12, a member of a "criminal gang with ulterior motives," *id.* at 12, an agent of the Chinese Communist Party, *id.* at 10, and characterized Heather's rape by Wei as "a one-night stand." *Id.* at 15.

As to Charlotte, Huang went even further: she described Heather and Charlotte as a mother-daughter team of scam artists, *id.* at 10, and then repeatedly posted Charlotte's birth certificate to social media, claiming that the birth certificate's listing of Heather's then-husband as Charlotte's father somehow corroborates that Heather and Charlotte are scam artists looking to extort Wei. *Id.* at 18, 10-11 (the "scamming mother-daughter duo").

Wei parroted these talking points. At various points in 2023, he told members of the Chinese dissident community (in which Heather travels) that Heather's allegations that he raped her and that Charlotte is his biological daughter are false, that Heather is a liar, and that she is acting on behalf of the Chinese

Communist Party. *Id.* at 22. In July 2024, Wei tweeted that "a large number of people" were spreading rumors about him, that "their sophistication has clearly increased," that "there is no such alleged illegitimate daughter at all," and that Heather was "a fraudster mother." *Id.* at 23–24.

Faced with the barrage of new defamatory statements, Charlotte and Heather filed the instant suit against Wei and Huang for defamation/libel, false light, and intentional infliction of emotional distress (the latter two claims just against Huang). *See* Dkt. 10-3 at 24-26. Wei and Huang moved to dismiss on several grounds, including timeliness, collateral estoppel, and various defamation-specific challenges. After briefing and a hearing, the district court denied the motions. *See* Case No. 23-2134, Dkt. 34 (D. Md. June 5, 2024) (denying motion to dismiss First Amended Complaint), and Dkt. 96 (D. Md. July 21, 2025) (denying motions to dismiss Second Amended Complaint).

In discovery, Heather and Charlotte sought the 23andMe test referred to in Suettinger's email. But in response to a subpoena, Suettinger's counsel said he didn't have the test results. *See* Case No. 23-2134, Dkt. 84-5 (D. Md. May 16, 20254). Heather and Charlotte then subpoenaed 23andMe. But 23andMe—represented by Greenberg Traurig, the same law firm that represents Wei—refused

to produce any documents in response to the subpoena. *See* Case No. 23-2134, Dkt. 84-7 (D. Md. May 16, 2025).

Heather and Charlotte then sought a Rule 35 examination of Wei, requesting a paternity test that would establish whether Charlotte was Wei's biological daughter. Wei refused to submit to the test, and Heather and Charlotte moved to compel it. After briefing, the district court held a hearing on the Rule 35 motion, on July 18, 2025. *See* Dkt. 10-2 at 18 (argument on Rule 35 motion begins).

After oral argument, the court gave its ruling. The court acknowledged that Rule 25 "includes express limitations on compelling an individual to submit to such examinations for discovery purposes." *Id.* at 22. The court first found that Wei's physical condition was "in controversy." *Id.* Citing Wei and Huang's social media posts, the court found that "whether Wei and Heather had . . . a sexual encounter and whether Wei sexually assaulted plaintiff Heather are all matters in controversy, and these matters are collectively a central issue to this defamation action." *Id.* The court found that the thrust of the defamatory statements were "framed by the assertion that the plaintiffs are lying that the defendant Wei is not Charlotte's biological father, that the defendant Wei did not sexually assault the plaintiff Heather, and indeed the defendant Wei did not even know the plaintiff Heather." *Id.* The court further noted that the issue of "Charlotte's paternity is highly

probative of several issues in this case, [and] goes directly to Wei's claims that he never met, assaulted, or impregnated one of the plaintiffs and fathered the other." *Id.* at 23. The court cited the email from Suettinger to Heather as evidence substantiating the plaintiffs' request. *Id.*

The district court then separately assessed the "good cause" requirement. It found that Heather and Charlotte had "already exhausted other methods" to try and obtain evidence in support of their position on the controversy. *Id.* at 23. It further found that the Rule 35 examination was particularly necessary because the 23andMe test results might not be admissible evidence given various evidentiary issues with those test results. *Id.* The court finally noted that the DNA test is "minimally invasive," involving a cheek swab or hair sample or (at worst) blood draw. *Id.* And the court determined that the requested discovery was overall proportional to the needs of the case. *Id.*

Wei has since moved for reconsideration of the district court's order on his motion to dismiss, for judgment on the pleadings, and for certification for interlocutory appeal. *See* Case No. 23-2134, Dkt. 109 (D. Md. Aug. 22, 2025). He also filed the instant petition for a writ of mandamus on the Rule 35 order.

## SUMMARY OF ARGUMENT

"Courts are extremely reluctant to grant a writ of mandamus." *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987). The petitioner—here, Wei—thus bears the "heavy burden" of showing that he has satisfied the three requirements for issuance of the writ. *In re Grand Jury Subpoenas, Apr., 1978, at Baltimore*, 581 F.2d 1103, 1107 (4th Cir. 1978).

*First*, Wei must show that he has "no other adequate means to attain the relief he desires[.]" *Kerr v. U. S. Dist. Ct. for N. Dist. of California*, 426 U.S. 394, 403 (1976). Wei fails this requirement. The district court's order does not resolve the evidentiary question of whether a jury (or anybody other than the litigants) will ever learn of the test or its result, so Wei may still challenge the admissibility at trial of the fact of the test and its result. That there is a confidentiality and protective order in place further protects Wei's privacy. *See* Case No. 23-2134, Dkt. 55 (D. Md. Oct. 15, 2024). Insofar as Wei's objection is to the fact of having to submit to the noninvasive test at all, then he has another avenue to challenge that, too: he can decline compliance with the district court's order and appeal the contempt order against him.

*Second*, Wei must "satisfy the burden of showing that (his) right to issuance of the writ is clear and indisputable." *Kerr*, 426 U.S. at 403. Wei fails this

requirement, too. The district court correctly applied Rule 35: it determined that Wei's parentage of Charlotte was "in controversy" and that there was "good cause" to order the test. Whether Wei disagrees with the manner in which the district court applied Rule 35 does not amount to it exceeding the lawful exercise of its jurisdiction or refusing to exercise its authority when it is its duty to do so. *Cheney*, 542 U.S. at 380. Rather, the district court exercised its discretion in making a discovery ruling, and a writ of mandamus is "hardly ever" appropriate when a district court exercises that sort of discretion. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) ("In short, our cases have answered the question as to the availability of mandamus in situations such as this with the refrain: 'What never? Well, hardly ever!'"); *Underwriters at Lloyd's*, 666 F.2d at 58 ("[M]andamus cannot be used to challenge ordinary discovery orders.").

*Third*, even assuming the first two requirements are met, the issuing court then must exercise its own discretion and be satisfied that the writ is appropriate under the circumstances. *Kerr*, 426 U.S. at 403. Wei flunks this requirement as well. Courts do not deploy mandamus against district judges exercising their discretion in managing discovery. That Wei (at 20) "believes" in his fantasy that Heather and Charlotte and their lawyers are acting secretly "on behalf of [a] foreign regime" is not a valid basis for a federal court of appeal to issue a writ of mandamus.

## ARGUMENT

## I. WEI HAS OTHER ADEQUATE MEANS TO ATTAIN THE RELIEF HE SEEKS.

To obtain mandamus relief, Wei must show that there are no other "alternative, less extreme" means of obtaining the relief he seeks. *Kerr*, 426 U.S. at 396. He fails to carry his burden. Wei may still challenge the admissibility at trial of the fact of the paternity test and its result, and the presence of the confidentiality and protective order entered in this case further protects Wei's privacy interest. *See* Case No. 23-2134, Dkt. 55 (D. Md. Oct. 15, 2024); *Mid-Am.'s Process Serv. v. Ellison*, 767 F.2d 684, 687 (10th Cir. 1985) (no mandamus relief when district court's entry of protective order protected against disclosure of information in civil discovery that could be self-incriminating in parallel criminal proceeding). Insofar as Wei's objection is to the fact of having to submit to the test at all, he has another avenue to challenge that, too: if he feels so strongly about his mitigated privacy interest in submitting to a noninvasive test whose result will be under a protective order and subject to evidentiary challenge, he can decline compliance with the district court's order and appeal the contempt order against him. *See Kaufman v. Edelstein*, 539 F.2d 811, 822 (2d Cir. 1976) (Friendly, J.) (no mandamus relief because non-party witness could "subject himself to contempt" to secure review of order requiring subpoena compliance); *Bennett v. City of Bos.*, 54 F.3d 18, 21 (1st

Cir. 1995) (no mandamus relief because non-party district attorney objecting to subpoena seeking confidential attorney work product could subject himself to contempt to obtain appellate review of order). Or he can wait for final judgment and challenge the discovery ruling then. *See In re Braxton*, 258 F.3d 250, 261 (4th Cir. 2001) (refusing to issue writ of mandamus compelling government to make its evidence available for DNA retesting because government could appeal order after final judgment).

Wei argues (at 20) that a "writ of mandamus is the only means to seek review" because he has no right to an interlocutory appeal under the collateral order doctrine. But that's the point: courts should not use mandamus relief as an end-run around the final judgment rule, and so the unavailability of interlocutory appeal cannot be a valid basis for issuing mandamus relief. *See Kerr*, 426 U.S. at 403 ("A judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies [underlying the final judgment rule] sought to be furthered by . . . Congress.").

## II.     THE RIGHT TO ISSUANCE OF THE WRIT IS NEITHER CLEAR NOR INDISPUTABLE.

Wei must show that he has a "clear and indisputable right to the relief sought." *In re Strickland*, 87 F.4th 257, 260 (4th Cir. 2023). "Demonstrating a clear and indisputable right to a writ of mandamus require[s] more than showing that the

district court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion." *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022). Rather, the Court must be convinced that the law imposes a "clear duty" on the district court to "do the specific act requested." *Strickland*, 87 F.4th at 260. Wei fails to carry his burden on this requirement, too.

1. The district court's decision ordering the Rule 35 examination was correct. Rule 35 permits an examination to determine whether Wei is Charlotte's biological father upon a showing that the question of biological fatherhood is "in controversy" and that there is "good cause" for the examination. *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964).

Rule 35's "in controversy" requirement is met where the "condition as to which the examination is sought is really and genuinely in controversy," as opposed to having "mere relevance to the case." *Schlagenhauf*, 379 U.S. at 118. The district court's decision in this regard was correct. It was also not special. Several courts have ordered DNA tests under Rule 35 where, as here, the plaintiff asserts that they were sexually assaulted by the defendant, the defendant denies that assertion, and DNA evidence would shed light on the truth. *See Ray v. Park*, 2021 WL 4950842, at *2 (W.D. Mo. Sept. 24, 2021) (paternity test would establish fact of sexual intercourse between the parties and thus be probative of whether the defendant

sexually assaulted the plaintiff); *Strong v. Wisc.*, No. 07-C-086-C, 2007 WL 5445863, at *1 (W.D. Wis. May 25, 2007) (DNA testing of pubic hair was probative of the plaintiff's claim of sexual intercourse, even if positive DNA test would not conclusively prove that the defendant sexually assaulted the plaintiff); *D'Angelo v. Potter*, 224 F.R.D. 300, 303 (D. Mass. 2004) (DNA test of defendant was clearly relevant to the plaintiff's claim that the defendant raped her when there was semen at the site of the alleged assault); *Ashby v. Mortimer*, 329 F.R.D. 650, 654 (D. Idaho 2019) (paternity test of defendant ordered because it would help prove that the defendant, a fertility doctor, had secretly used his own semen to artificially inseminate the plaintiff); *Rousseau v. John Boyd Coates, III, M.D.*, No. 2:18-CV-205, 2019 WL 12323324, at *1 (D. Vt. Sept. 12, 2019) (granting Rule 35 motion where "[t]he question of parenthood in this case has been placed 'in controversy' by both parties. Plaintiffs claim that Dr. Coates is the biological father of their daughter. Dr. Coates contributes to the controversy by denying paternity."). Given that the core of Wei's defense is that he could not be Charlotte's biological father because he never even met Heather, much less raped her, Wei's physical condition—his relationship to Charlotte and whether he had sexual intercourse with Heather—is in controversy. *See* Case No. 23-2134, Dkt. 103 at 16 (D. Md. Aug. 1, 2025) ("Wei has no recollection of interacting with [Heather] or of having any sexual encounter

with her during his trip to Los Angeles in March 2000, and denies the same. Indeed, Wei has no recollection of ever having any sexual encounter with [Heather] at any time.").

Rule 35's good cause requirement is met when the court considers the movant's ability to obtain the requested information by other means. *Schlagenhauf*, 379 U.S. at 118. Here, the district court's decision that there was good cause for the test was correct because there is no other way to prove that Wei is Charlotte's biological father. That Heather and Charlotte have been stymied in their attempts to subpoena the results of a previously conducted 23andMe DNA test further supports good cause. *See* Case No. 23-2134, Dkt. 84-5 (D. Md. May 16, 2025); Case No. 23-2134, Dkt. 84-7 (D. Md. May 16, 2025). The district court's decision in this regard was correct and not special. *See Ashby*, 329 F.R.D. at 656 ("Dr. Mortimer's paternity of Rowlette . . . cannot be confirmed by the Ancestry.com results or other alternative mean. Good cause thus supports granting Plaintiffs' motion."); *Ray*, 2021 WL 4950842, at *3 (finding good cause where the defendant "denies sexual contact with Mr. Ray, consensual or otherwise," because "[t]here is no discovery device, other than a physical examination, that would potentially permit Mr. Ray to prove his allegations with physical evidence"); *D'Angelo*, 224 F.R.D. at 304 (finding

good cause for a DNA test because "there is no other means by which D'Angelo can prove that the semen is that of Kelley").[4]

There is also good cause because, as court after court has found, the burden of providing DNA is minimal. *E.g.*, *Ray*, 2021 WL 4950842, at *4 (finding good cause where "a buccal swab . . . would be minimally invasive and would not significantly infringe on the privacy of" the person giving the swab); *Ashby*, 329 F.R.D. at 655–56 (same, because "allowing a technician to swab the inside of his cheek to obtain a DNA sample is a 'minimal' invasion of Dr. Mortimer's privacy"); *McGrath v. Nassau Health Care Corp.*, 209 F.R.D. 55, 61 (E.D.N.Y. 2002) (same, because "the taking of the sample, . . . which can be obtained either in a blood test or a cheek swab, is 'only a minimal intrusion on the party's privacy rights'"); *Strong*, 2007 WL 5445863, at *1 (holding that a DNA test "passes the 'good cause' threshold of Rule 35(a)" because it "is minimally intrusive and highly relevant to the accurate determination of a lynchpin factual dispute").

---

[4] Indeed, there would still be good cause even if the 23andMe test results were available, because of the challenges with the admissibility of such results. *See Ashby*, 329 F.R.D. at 655 ("[T]he Ancestry.com test does not provide conclusive proof of paternity because, inter alia, there is no documented chain of custody. . . . Due to the potential inadequacy of the Ancestry.com test to establish paternity, Plaintiffs cannot obtain conclusive evidence of paternity absent a DNA test.").

2.    Even if this Court disagrees with the district court's analysis, that does not give rise to mandamus. A finding of error is not enough to trigger mandamus. In *Leonard*, 38 F.4th at 490, the Fifth Circuit concluded that it probably would have quashed the Rule 45 subpoena. But it still declined to order mandamus relief to undo the district court's decision not to quash the subpoena because "district courts are afforded wide discretion in discovery matters" and the court "purported to apply the relevant law"—and so the petitioner could not "show a clear and indisputable right to the writ." *Id.* Similarly, even if the Court is persuaded by Wei's arguments (it shouldn't be) and would have applied the "in controversy" and "good cause" requirements differently than the district court, mandamus relief is still not warranted because the district court applied the requirements in Rule 35, assessed the relevant case law, analyzed the relevant allegations, and came to a reasoned decision acting within its discretion to manage discovery.

3.    Wei makes a flurry of arguments in response. They are not persuasive. He contends (at 21) that the district court "appears to have applied a lower, Rule 26-like relevance standard to determine discoverability." But the district court's oral ruling expressly cites, analyzes, and applies both the "in controversy" and "good cause" requirements. *See* Dkt. 10-2 at 22-23. The district court's reference to the "broad and liberal treatment" applied to the discovery rules comes straight

from a Supreme Court decision interpreting Rule 35. *See Schlagenhauf*, [379 U.S. at](#) [114](#)–15 ("We enter upon determination of this construction with the basic premise that the deposition-discovery rules are to be accorded a broad and liberal treatment . . . to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark.").

Wei next argues (at 17-18) that his biological paternity of Charlotte is not in controversy. But Wei has alleged that he "has no recollection of ever having any sexual encounter with [Heather] at any time" and denies that he did so.[5] Case No. 23-2134, Dkt. 103 at 16 (D. Md. Aug. 1, 2025). The paternity test will thus resolve whether his denials are true or false. Moreover, Heather and Charlotte's defamation claim against Wei places "in controversy" the question of whether Wei raped Heather and fathered Charlotte by doing so. *See* Dkt. 10 at 6. That a positive

---

[5] Wei argues (at 26, in footnote 6) that the Court should blind itself to Wei's defenses because he didn't file his answer and counterclaim until after the district court issued the Rule 35 order. But Wei's denial of the rape allegations was in front of the district court—Wei's statements are in the complaint, *supra*, and Wei said it in his motion to dismiss briefing. *See* Case No. 23-2134, Dkt. 67-1, at 12 (D. Md. [Jan. 16,](#) [2025](#)) ("Wei's denials are consistent with his right to assert his innocence and defend his reputation against unsubstantiated accusations."). Mandamus petitions are often mid-litigation attempts at interlocutory appeal, so it is expected for the trial record to continue to develop even as the mandamus petition is being litigated. That the argument for ordering a Rule 35 examination has gotten stronger as the litigation has developed confirms that the district court's decision was correct.

paternity test will not by itself prove the sex was not consensual is not required under Rule 35.

Wei asserts (at 26-27) that the district court conflated Heather and Charlotte's claims against Wei with the claims against Huang, and that he should not be subject to a paternity test to help prove the defamation claims against Huang. But the district court expressly considered the claims against both defendants (and their defenses) and found the paternity test was appropriate. *See* Dkt. 10-2 at 22. In any event, the Rule 35 movant does not even need to have filed a pleading against the party to be examined, let alone have specific claims against him. *See Schlagenhauf*, 379 U.S. at 116.

Wei next contends (at 30-31) that there is no "good cause" for ordering a Rule 35 examination because the man listed on Charlotte's birth certificate—Heather's then-husband (now ex-husband), Meng Zhang—"is presumed to be [Charlotte's] father absent conclusive evidence to the contrary." Citing the Maryland Code, Wei further argues (at 31-32) that "[t]he law presumes that [Meng Zhang] is the father of [Charlotte]. Full stop." Not quite. Wei omits that the Maryland Code provision also states that "a man is the father if . . . on the basis of genetic testing, the man is indicated to be the child's biological father," so it isn't quite as helpful as Wei thinks it is. *See* Md. Code, Fam. Law § 5-3A-06(a)(7).

Regardless, none of this squabbling over the technical concept of legal parentage has anything to do with whether Wei raped Heather and fathered Charlotte by doing so and then lied about it—and that is what a DNA test will shed light on in this defamation litigation. This case is not a probate matter or a family law matter or a dispute over life insurance proceeds under substantive Illinois law. *See Minnesota Life Ins. Co. v. Jones*, 771 F.3d 387, 390–91 (7th Cir. 2014).

Wei argues (at 31) that the district court erred because it should have first ordered a DNA test of non-party Meng Zhang to show that Zhang is *not* Charlotte's biological father. But requiring a genetic test of a non-party as a prerequisite to conducting a genetic test of a party is not a requirement of Rule 35 (or allowed by it). Wei asserts that the district court erred because it should have demanded more proof before ordering the Rule 35 examination. But the district court had proof that the test would yield material information—it cited the Suettinger email—and anyway the Rule 35 movant does not need to "prove his case on the merits in order to meet the requirements for a mental or physical examination." *Schlagenhauf*, 379 U.S. at 119. *See also id.* ("[T]here are situations where the pleadings alone are sufficient to meet these [Rule 35] requirements.").

Wei argues (at 32-36) that he "genuinely believes" that the Chinese Communist Party is behind this lawsuit, that Heather "is part of this effort," and

that Heather's "allegations of rape are part of a broader effort by the CCP to harass and silence him." If Wei is so convinced of this plot, one would think he would just take the paternity test to disprove the allegations. His contention (at 20) that the paternity test cannot be undone is undermined by the fact that Wei has already had a paternity test done once before to determine whether he is Charlotte's biological father. In any event, Wei's counsel is careful to frame all of these statements as Wei's *beliefs*—and his (however outlandish) beliefs about the motives of the litigants does not trigger mandamus review. *See Grand Jury Subpoenas*, 581 F.2d at 1107 (refusing to issue a writ of mandamus to stop grand jury proceedings when petitioner claimed—and actually had some evidence—that the IRS was engaged in misconduct of "using grand jury powers to further administrative investigations that have otherwise become stymied").

## III.   IT IS NOT APPROPRIATE TO ISSUE THE WRIT IN THESE CIRCUMSTANCES.

Even assuming the first two requirements are met (they're not), the issuing court then must exercise its own discretion and be satisfied that the writ is appropriate under the circumstances. *Strickland*, 87 F.4th at 260.

The circumstances do not merit mandamus relief. Ultimately, Wei's request is that this Court substitute the district court's judgment on a discovery dispute with its own. But "[d]ecisions regarding the scope of discovery . . . and the

protections to be afforded parties in the discovery process[] are ordinarily left to the informed judgment of the district judge, who is in a unique position to gauge and balance the potentially conflicting interests at stake." *In re Insurers Syndicate for Joint Underwriting of Medico-Hosp. Pro. Liab. Ins.*, 864 F.2d 208, 211 (1st Cir. 1988). "Interlocutory procedural orders" thus "rarely will satisfy th[e] precondition for mandamus relief." *Id.* This case is not the rare exception. It does not present any "special circumstances" that "justify the issuance of the writ, such as persistent disregard of the Rules of Civil Procedure." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1195 (10th Cir. 2009) (denying mandamus relief request). Wei does not point to evidence of "a gross abuse of discretion" or evidence "that the district court's ruling is representative of . . . an error often repeated . . . in the court-managed portion of discovery." *Id.* at 1196.

Finally, a close reading of *Schlagenhauf v. Holder*, 379 U.S. at 110, largely forecloses Wei's petition. While the Court issued a writ of mandamus in the context of a Rule 35 examination, the Court took care to state that issuance of the writ in that case was historically unique and not likely to be replicated: the district court's order requiring the examination of a defendant was "the first of its kind" "in any reported decision in the federal courts under Rule 35"—and the Court stated that future cases involving a district court's purported error in applying Rule

35 would probably *not* be appropriate for mandamus relief. *Id.* at 112. On the merits, this case doesn't look anything like *Schlagenhauf*, where the district court without a hearing ordered the defendant in a routine auto accident case to sit for *nine* medical examinations by a battery of different physicians. *Id.* at 109. By contrast, Judge Maddox's decision in this case was a measured, patient, narrow, and straightforward application of Rule 35.

## CONCLUSION

The petition should be denied.

Date: September 8, 2025

Respectfully submitted,

/ s / Adam Farra
Times Wang
Adam Farra
FARRA & WANG PLLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
twang@farrawang.com
afarra@farrawang.com
(202) 505-5990

*Counsel for Huaizhao Liu
and Charlotte Zhang*

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,597 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface called Equity A using Microsoft Word in 14-point font.

/ s / Adam Farra

*Counsel for Huaizhao Liu*
*and Charlotte Zhang*

## CERTIFICATE OF SERVICE

This document was served on the following parties on the date below:

- U.S. District Judge Matthew J. Maddox
  (via CM/ECF filing in the District of Maryland)

- David G. Barger
  Robert W. Angle
  Greenberg Traurig LLP
  (via CM/ECF filing in the Fourth Circuit)

  *Counsel for Jingsheng Wei*

- John P. Rowley III
  Adriaen M. Morse Jr.
  SECIL Law PLLC
  (via email (with written consent))

  *Counsel for Ciping Huang*

Date:  September 8, 2025               / s / Adam Farra

                                       *Counsel for Huaizhao Liu*
                                       *and Charlotte Zhang*