**IN THE**

# United States Court of Appeals

**FOR THE FOURTH CIRCUIT**

*IN RE* **JINGSHENG WEI, Petitioner.**

REPLY IN SUPPORT OF
PETITION FOR WRIT OF MANDAMUS

GREENBERG TRAURIG, LLP
David G. Barger
1750 Tysons Blvd.
Suite 1000
McLean, VA 22102
Tel: (703) 749-1300
Email: bargerd@gtlaw.com

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

REPLY TO STATEMENT OF FACTS .................................................3

REASONS WHY THE WRIT SHOULD ISSUE ....................................6

I.     BEING IN CONTEMPT OF COURT IS NOT AN ADEQUATE
       MEANS TO SEEK REVIEW TO PREVENT AN UNWARRANTED
       INVASION OF HIS PRIVACY ...................................................6

II.    THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES ..........8

III.   THE RIGHT TO ISSUANCE IS CLEAR AND INDISPUTABLE.............10

       A.     Plaintiffs Largely Ignore the District Court's Erroneous
              Reliance on *Hickman v. Taylor* ..........................................10
       B.     Genetic Paternity is Not in Controversy and Liu's Claim that
              Wei Put it At Issue is Absurd Since Wei had Not Even Filed an
              Answer at the Time the Court Issued the Rule 35 Order ....................11
       C.     Plaintiffs Try to Muster Good Cause By Pointing to Irrelevant
              Documents and Misrepresenting Wei's Arguments ...........................15
       D.     The Court Abused its Discretion By Ignoring Wei's Reasonable
              and Credible Concerns the CCP Seeks to Invade His Privacy to
              Harass Him for His Civil Rights Work .............................................19

CONCLUSION ........................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Bennett v. City of Bos.*,
   54 F.3d 18 (1st Cir. 1995)...............................................................8

*In re Clinton*,
   970 F.3d 357 (D.C. Cir.), *on reh'g*, 973 F.3d 106 (D.C. Cir. 2020)....................6

*In re Cooper Tire & Rubber Co.*,
   568 F.3d 1180 (10th Cir. 2009) ..............................................9

*In re Grand Jury Subpoenas, Apr., 1978, at Baltimore*,
   581 F.2d 1103 (4th Cir. 1978) ..............................................20

*In re Insurers Syndicate for Joint Underwriting of Medico-Hosp. Pro.
   Liab. Ins.*,
   864 F.2d 208 (1st Cir. 1988)..............................................9

*Kaufman v. Edelstein*,
   539 F.2d 811 (2d Cir. 1976) ..............................................7, 8

*Minnesota Life Ins. Co. v. Jones*,
   771 F.3d 387 (7th Cir. 2014) (Posner, J.) ..............................16

*In re Pruett*,
   133 F.3d 275 (4th Cir. 1997) ..............................................7

*Schlagenhauf v. Holder*,
   379 U.S. 104 (1964)..............................................7, 9, 10, 11, 14

*In re Sealed Case No. 98-3077*,
   151 F.3d 1059 (D.C. Cir. 1998)..............................................6

*Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs*,
   315 F.R.D. 612 (N.D. Fla. 2016) ..............................................19

## State Statutes

Md. Code Ann., Fam. Law § 5-3A-06..............................................16

Md. Code Ann., Fam. Law § 5-3A-06(a) ..............................................15

## INTRODUCTION

Respondents-Plaintiffs Huaizhao Liu and Charlotte Zhang ("Plaintiffs") respond by reiterating the Second Amended Complaint's allegations of rape and minimizing Petitioner Jingsheng Wei's concerns for bodily autonomy and harassment. Their Answer Brief ("Answer") relies on a single theme: Plaintiffs have *alleged*—another word for a belief, short of a fact—rape and paternity, so they are entitled to Wei's entire genetic code. Missing from their Answer is substantive engagement with the Amended Petition's ("Petition's") arguments. As such, Wei's showing that the District Court's order granting a Rule 35 order for a genetic paternity test of Wei ("Rule 35 Order") constitutes an oppressive and impermissible use of Rule 35 remains largely unchallenged.

First, Plaintiffs begin with a novel suggestion—this Court should jettison this Petition entirely because Wei can simply commit civil contempt as a preferred method for seeking appellate review. This is not only ridiculous, but directly contrary to the Supreme Court's and this Court's prior rulings that a writ of mandamus is the appropriate remedy for challenging an order for a Rule 35 medical examination.

Second, Plaintiffs largely elide *why* a writ is appropriate under the circumstances—because a medical test is irreversible, and instead present generic discussion of the difficulty of obtaining a writ.

Third, Plaintiffs' consideration of the Rule 35 Order's numerous errors is a collection of misstatements, conclusory summations of irrelevant law, and a heavy use of rhetoric.

They begin by trying to creatively read hearing transcript to cover for the Rule 35 Order's reliance on a lower legal standard at the commencement of its analysis.

With regard to the "in controversy" requirement, Plaintiffs incorrectly argue that genetic paternity is "in controversy" based on *Wei's* defenses. This is untrue and impossible—Wei had not even filed an answer at the time the court considered the Rule 35 motion, so he had put precisely nothing at issue. They also incorrectly conclude Rule 35 permits a medical examination when an issue is "in controversy" as to claims against a different party, and ironically rely on a case that held the opposite.

Turning to "good cause," Plaintiffs do no overcome the utter absence of any evidence supporting the need for a paternity test in the face of a legal presumption that another man is Zhang's father. They flatly misrepresent Maryland law to suggest that there is a presumption Wei is the legal father, but then in the same breath try to dismiss the significance of a presumption when seeking a Rule 35 order. Likewise, while they claim that a paternity test from 23andMe has proven Wei is Zhang's father, they cite no evidence they have tried and failed to obtain that

evidence. They close with a strawman argument that their only other option would be to obtain a Rule 35 Order of a non-party, which is certainly not the position Wei has taken.

Lastly, Plaintiffs level a personal attack on Wei for raising his serious concern that this case risks the weaponization of Rule 35 and may be an example of the Chinese Communist Party's ("CCP's") use of lawfare. This criticism ultimately rings hollow because it ignores that Plaintiffs sought a Rule 35 order based on their beliefs in the first instances and that there are undisputed facts informing Weis concerns and opposition. The difference in this battle of beliefs is that Wei is not trying to invade another person's bodily autonomy.

## REPLY TO STATEMENT OF FACTS

The Petition's Statement of Facts lays out the relevant facts. Am. Pet. at 3-6. Plaintiffs do not directly dispute the Statement of Facts, but they separately recite the allegations of the Second Amended Complaint ("SAC"). This approach does little to impact this Petition, but Wei replies to correct the record.

Wei hotly disputes Lius's allegations of rape, and he has now counterclaimed for defamation and abuse of process. *See generally* **Ex. H**[1], Dkt. 103, Def. Wei Answer and Counterclaims. Liu first contacted Wei in August 2018, claiming that

---

[1] Exhibits A through G are attached to the Amended Petition. Exhibit H is attached to this Reply.

they had a daughter together. *Id.* ¶ 23. Liu informed Wei she was a single mother and had raised Zhang alone, even falsely claiming her daughter's surname was "Liu," and not "Zhang," (Charlotte Zhang's father's surname). *Id.* ¶¶ 24-25, 43. Wei said he would help Plaintiffs if he was indeed Zhang's father, and he asked for photos, her birth certificate, and later, a paternity test. *Id.* ¶¶ 26, 30-31. Liu agreed but failed to follow through, instead demanding ever-increasing sums of money. *Id.* ¶ 28, 45, 36, 54, 58-59. When Wei explained he could not possibly send such sums, so Liu threatened Wei with a public "scandal." *Id.* ¶¶ 36, 37.

In 2019, Wei learned the truth: Charlotte's last name was Zhang, not Liu; Liu was married to Meng Max Zhang when Charlotte had been conceived and born; and Zhang's birth certificate listed Meng Max Zhang as her father. *Id.* ¶ 60-62, 66.

Just as Wei realized Liu had been lying to him and refused to engage further, the harassment started. In October 2019, members of the United States Government received letters that Wei was a morally reprehensible individual. *Id.* ¶ 68. And in July 2020, Liu's friend published an article in China accusing Wei of rape—and accusation Liu had never made up to that point. *Id.* ¶ 69. This alone was a red flag— the CCP has long censored and deleted every article containing Wei's name, but this defamatory article was never censored. *Id.* ¶ 70. In 2020, Liu began monetizing her allegations through a GoFundMe and began (and still persists in) an unceasing social

media assault attempting to brand Wei as a rapist, sexual predator, and a bully. *Id.* ¶¶ 76-87.

As detailed in the Petition, Liu also commenced a five-year legal battle in DC Superior Court, which she lost on summary judgment. Am. Pet. at 5-6. Throughout years of discovery in the DC Litigation Plaintiffs never adduced credible evidence establishing that Liu and Wei met in 2000, much less that Wei raped Liu. Plaintiffs subtly seeks to discredit the DC Court's summary judgment ruling in favor of Wei on a similar defamation claim by repeatedly stating Liu was pro se. Answer at 5. As a basic matter, this Court cannot and should not diminish the order of another court simply because a party is pro se when the order was entered.[2] Such an inference would upend the legal system and basic ideas of comity and preclusion. Plaintiffs' fixation is also misleading; as noted in the Petition, Plaintiffs had been represented by multiple lawyers in the DC Litigation for years, including during discovery. Am. Pet at 5 n.3. Plaintiffs also concurrently had legal counsel representing them in the instant litigation.[3] Despite having legal representation during discovery, Plaintiffs never mustered sufficient evidence to overcome a motion for summary judgment.

---

[2] Indeed, Plaintiffs have not argued in the lower court that the DC Order should not have preclusive effect because they were pro se at the time it was briefed.

[3] Prior to the entry of the summary judgment order in the D.C. Litigation, Plaintiffs—represented by counsel—filed the instant case. Notably, however, Plaintiffs' counsel elected not to enter an appearance in the D.C. Litigation.

## REASONS WHY THE WRIT SHOULD ISSUE

**I.   BEING IN CONTEMPT OF COURT IS NOT AN ADEQUATE MEANS TO SEEK REVIEW TO PREVENT AN UNWARRANTED INVASION OF HIS PRIVACY**

Wei has no other adequate means to attain the relief he seeks because by the time he can take an appeal as of right, his bodily autonomy will have been violated. Am. Pet. at 12-13.  Liu wholly misses the point of this element and argues that Wei has an alternative means of review because he can seek to exclude the admissibility of the genetic testing at a later date.  Answer at 2, 12.  Wei's concern before this Court is not in the results, it is in the process.  The issue is the invasiveness and harassment of the test itself.  And once the sample has been collected, the damage has been done, regardless of the outcome.

Realizing that Wei's opposition is to the test itself, Liu claims that Wei's proper avenue of relief is to simply commit contempt of court and appeal the contempt order.  Answer at 2-3, 13.  However,

> "[T]he disobedience and contempt route to appeal cannot be labeled an adequate means of relief *for a party-litigant*."  *In re Sealed Case No. 98-3077* raised the concern . . . that "[w]hile a criminal contempt order issued against a party is considered a final order and thus appealable forthwith under 28 U.S.C. § 1291 ... a civil contempt order issued against a party is typically deemed interlocutory and thus not appealable under 28 U.S.C. § 1291[.]" 151 F.3d at 1064 (citations omitted).

*In re Clinton*, 970 F.3d 357, 363 (D.C. Cir.), *on reh'g*, 973 F.3d 106 (D.C. Cir. 2020) (internal citations omitted) (quoting *In re Sealed Case No. 98-3077*, 151 F.3d 1059,

1065 (D.C. Cir. 1998)) (emphasis in original) (holding that a civil contempt order did not provide an adequate means to obtain relief). Plaintiffs are simply incorrect—committing civil contempt does not provide an immediate appellate option in a civil case such as this one. So committing contempt is just as viable as a motion for reconsideration, which is not considered an adequate means to seek review.

Moreover, Plaintiffs' contempt solution has been rejected by controlling case law. In *Schlagenhauf v. Holder*, 379 U.S. 104, 110, 121-22 (1964), the Supreme Court issued a writ to quash a Rule 35 order, which necessarily demonstrates that a petitioner required to undergo imminent medical examination in a civil case has no other adequate remedy. Likewise, this Circuit has expressly held that a petition for a writ of mandamus is appropriate for certain types of discovery orders, in lieu of refusing to comply with the order and appealing a contempt order. *In re Pruett*, 133 F.3d 275, 280 (4th Cir. 1997) (addressing availability of mandamus review for a discovery order issued *ex parte*). In reaching this conclusion, the Fourth Circuit held "controversies over the allowance of discovery are by their very nature short lived because reversal on appeal cannot undo the disclosures," and then expressly looked to *Schlagenhauf's* decision regarding Rule 35 orders. *Id.* at 278, 280.

The cases on which Plaintiffs rely to advocate civil contempt are inapposite. Answer at 12. *Kaufman v. Edelstein*, 539 F.2d 811, 812 (2d Cir. 1976), involved a petition for a writ of mandamus quashing a subpoena to prevent the petitioner from

testifying regarding expert advice he had provided clients. The argument was not that the act of testifying was somehow objectionable, and the substance of the testimony was not personal or private—it was on information he would have already shared with his clients. *Id.* Likewise, *Bennett v. City of Bos.*, 54 F.3d 18, 19 (1st Cir. 1995), involved an order to produce documents relating to a police investigation. The petitioner did not seek a writ because the act of producing was substantively difficult, but because it wanted to protect the content of the records. *Id.* at 19-20. Further the court entered a protective order. *Id.* at 20.

There is no way to reverse the act of the genetic test. It constitutes an invasion of Wei's physical autonomy and sense of privacy, and it cannot be undone. Because this test is to be administered in the coming weeks, Wei has no other adequate means of review.

## II.   THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES

Plaintiffs do not respond to Wei's argument that a writ is appropriate under the circumstances on the grounds that there is no undoing a medical examination. *Compare* Am. Pet. at 13, *with* Answer. As such, they seem to concede that the test is irreversible.

Instead, Plaintiffs purport to address this element at the close of its Answer Brief by arguing this Court should not "substitute the district court's judgment on a discovery dispute with its own." Answer at 22. It then relies on cases regarding

discovery disputes, neither of which involve a dispute over a Rule 35 order, let alone a challenge to a Rule 35 order seeking genetic information based on paternity being "in controversy" as to a different defendant.  Answer at 23-24.[4]  This Petition is not merely a challenge to the District Court's judgment or how it balanced certain factors.  Wei has identified concrete legal errors through the application of the Rule 26 relevance standard to the elements of the Rule 35, error in considering the claims and defenses as they relate to a different party in evaluating "in controversy", basing a decision on "good cause" on allegations and not evidence, and wholly ignoring Wei's concern for the weaponization of Rule 35.

Finally, Plaintiffs argues that dicta from a "close reading" of *Schlagenhauf* "forecloses" this petition because the court had supposedly cautioned that the issuance of a writ "is not likely to be replicated."  Answer at 23.  But all the cited section does is note that the legal question before it, whether a defendant (as opposed to a plaintiff) could be subject to a Rule 35 order was a novel legal question.  *Schlagenhauf*, 379 U.S. at 110.  Indeed, a page down from Plaintiffs' cited section, the Court observed "that in the ordinary situation where the sole issue presented is

---

[4] *In re Insurers Syndicate for Joint Underwriting of Medico-Hosp. Pro. Liab. Ins.*, 864 F.2d 208, 211 (1st Cir.  1988), involved the petitioner's opposition to the production of business and insurance documents under a Rule 26 standard, subject to a protective order.  *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1184-85 (10th Cir.  2009), also involved an order compelling the production of business documents regarding a tire design under a Rule 26 standards.

the district court's determination that 'good cause' has been shown for an examination, mandamus is not an appropriate remedy, **absent, of course, a clear abuse of discretion**." *Id.* at 111 (emphasis added). The petition is not merely a challenge to weighing factors for good cause—as stated numerous times, the District Court applied the incorrect legal standard at every step and committed a "clear abuse of discretion."

## III. THE RIGHT TO ISSUANCE IS CLEAR AND INDISPUTABLE

### A. Plaintiffs Largely Ignore the District Court's Erroneous Reliance on *Hickman v. Taylor*

The District Court commenced its analysis with applying a Rule 26-like standard, indicating that it committed legal error from the start. Am. Pet. at 15-16. Plaintiffs largely sidestep the fact that the District Court's analysis was based on the (incorrect) holding that: "Like all discovery rules, Rule 35 is to be accorded broad and liberal treatment in order to effectuate their purpose that civil trials in federal courts no longer need be carried on in the dark. That's a Supreme Court case that stands for that proposition, *Hickman v. Taylor*[, 329 U.S. 495] (1947)." Am. Pet. Ex. A, Hr'g T. 80:19-23. Plaintiffs attempt to re-write the Hearing Transcript, suggesting that when the District Court explicitly cited and referenced *Hickman*, it was really citing *Schlagenhauf*. Answer at 18 (suggesting the court's citation to *Hickman* was a citation to *Schalegenhauf*). But it is clear that the District Court was treating a Rule 35 medical examination like any other discovery request—which it

is not.  The bottom line is that the District Court began its analysis with a legal error, by treating a Rule 35 motion like a motion governed by Rule 26, thus setting it up for every serious error that followed.

**B.    Genetic Paternity is Not in Controversy and Liu's Claim that Wei Put it At Issue is Absurd Since Wei had Not Even Filed an Answer at the Time the Court Issued the Rule 35 Order**

Wei next explained that genetic paternity was not in controversy, and it could not become "in controversy" based on a claim against a different defendant.  Am. Pet at 16-21.    After all, "the in controversy [requirement] limits 'sweeping examinations of a party who **has not affirmatively put into issue his own mental or physical condition**,' and 'to hold otherwise would mean that such examinations could be ordered routinely.'"  Am. Pet. at 16 (quoting *Schlagenhauf*, 379 U.S. at 121-122 (emphasis added).  Plaintiffs insist that genetic paternity is relevant to the case, *Wei* put genetic paternity at issue, and that the claims against Co-Defendant Huang also place the issue in controversy.  This response falls flat for three reasons.

**First**, Plaintiffs insistence that DNA evidence is relevant to this case is conclusory, untethered to the actual defamation claim in this case, and based on a string citation of irrelevant cases.  Answer at 14-15.  Not one cited case involves a defamation claim, let alone a defamation claim in which the statements at issue are claims that the plaintiff is a fake and a liar.  In that vein, Plaintiffs do not dissect the

allegedly defamatory statements and explain how genetic paternity is in controversy based on the elements of the claim and the specific statement at issue.[5]

**Second**, Plaintiffs default to claiming that Wei put genetic paternity "in controversy" by raising a defense that is based on genetic paternity: "the core of Wei's defense is that he could not be [Zhang's] biological father because he never met never even met Liu, much less raped her." Answer at 15; *see also id*. at 19. Not only is this incorrect, it is flatly impossible that this would have been the case. At

---

[5] Recall, the defamation claim is based on generic allegations that Wei denied that he raped Liu and subsequently fathered her child, stated Liu is a liar, and claimed Liu's actions advance the CCP's interests. SAC ¶ 86. The Complaint then recounts a "specific occasion in December 2023," in which Wei allegedly told attendees "that Plaintiff Liu's allegations against him were false, that she was a liar for making those allegations, and that she was acting on behalf of the CCP in doing so." SAC ¶ 87. The only written statement at issue was the DC Litigation post-summary judgment victory tweet, in which he allegedly states:

> They say if you spread a rumor, no matter how much effort you put in, it will be hard to completely clean it up. The CCP has, throughout its history, often deployed rumors [as a political tactic]. In the 1940s, they created rumors about Chiang Kaishek, and the book "The Pipe Dream of Nanking" played no small part. In recent years, people I've never met before claimed to know me. It's not just about tarnishing my reputation; they're requesting documents from [my] foundation, and it's clear that they are targeting the entire democracy movement. They even mobilized a large number of people to spread these rumors, and their sophistication has clearly increased. Recently, the court ruled against them, and there is no such alleged illegitimate daughter at all.

Am. Pet. at Ex. B, Dkt. 63, SAC ¶ 90. In response to a comment on the post urging Wei to do a DNA test, Wei responded "Would you want a liar for a daughter? Throw in a fraudster mother." *Id*. ¶¶ 91-92. Wei's statement is not a denial of genetic paternity.

the time the District Court issued the Rule 35 Order, Wei had not pled a single defense or answered a single allegation. Plaintiffs sought this Rule 35 Order before he had such an opportunity. Moreover the core of Wei's defense to date has been that this entire case is precluded by the DC Court's order granting summary judgment, which was based in turn on a finding that the statements at issue were opinion. Am. Pet. at Ex. C, Dkt. 67-6. Wei had put *nothing* at issue when the District Court ordered a genetic paternity test.

In anticipation of this obvious issue, in a footnote, Plaintiffs argue that the denial of the rape allegations were part of the motion to dismiss briefing, and that is enough. Answer at 19. Denial of *rape*—an act involving questions of consent—is not the same as genetic parentage. Further, it is amazing to say that an argument of a denial of a rape allegation in a motion to dismiss is akin to an answer, counterclaim, or discovery response which affirmatively creates disputes of facts for the purpose of the litigation. These things are not the same.

**Third**, because Wei had not put genetic paternity in controversy, the District Court erroneously relied on the claims against Co-Defendant Huang to analyze the "in controversy" requirement. Am. Pet. 19-20. Plaintiffs insist the District Court *did* consider the claims against Huang, but offer no explanation how that could be in light of the District Court's reference to "social media posts from the defendants." *Compare* Answer at 20, *with* Am. Pet at 20. Given the weakness of this argument,

13

they then accept that the District Court did considered the claims against Huang, but that that is acceptable because a Rule 35 movant does not need even have filed a pleading against the party to be examined. Answer at 20 (citing *Schlagenhauf*, 379 US at 116).). *Schlagenhauf* does not support such a use. While the Supreme Court found that there is no per se error in a co-defendant seeking a Rule 35 order for a physical examination of another co-defendant where there are no cross-claims, *Schalgenhauf*, 379 U.S. at 116, issued a writ because:

> The Federal Rules of Civil Procedure should be liberally construed, **but they should not be expanded by disregarding plainly expressed limitations**. The 'good cause' and 'in controversy' requirements of Rule 35 make it very apparent that **sweeping examinations of a party who has not affirmatively put into issue his own mental or physical condition are not to be automatically ordered** merely because the person has been involved in an accident—or, as in this case, two accidents—and a general charge of negligence is lodged. Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule.

*Id*. at 121 (emphasis added). There, the Supreme Court held that one defendant (the employer) could not subject another defendant (an employee) to an examination because the employer put the employee's medical condition at issue. *Id.* So even if Plaintiffs or Huang placed genetic paternity at issue, that is not a basis for a Rule 35 Order as to *Wei*. Thus, the issue is not in controversy here.

## C.     Plaintiffs Try to Muster Good Cause By Pointing to Irrelevant Documents and Misrepresenting Wei's Arguments

The issue of good cause is not simply a showing of relevance – the moving party must present evidence that it may not obtain the same information through different means.  Am. Pet. at 22-25.  Here, Plaintiffs are trying to obtain a Rule 35 medical examination based on allegations of paternity in the face of (1) a legal presumption that a different man is Zhang's biological father and (2) **no** evidence to rebut that presumption.  Plaintiffs' attack is a multi-pronged approach with no merit at any prong.

They begin with what appears to be an attack on the legal presumption that Meng Zhang is Zhang's father, quipping that the law "isn't quite as helpful as Wei thinks it is." Answer at 20.  This argument is simply a misrepresentation of Maryland law to the Court.  Wei argued "Mr. Zhang is presumed to be Zhang's father absent conclusive evidence to the contrary." (Am. Pet. 24 (citing Md. Code, Fa, Law § 5-3A-06(a).) The relevant code states:

(a) Unless a court excludes a man as the father of a child, a man is the father if:

**(1) the man was married to the child's mother at the time of the child's conception;**

**(2) the man was married to the child's mother at the time of the child's birth;**

**(3) the man is named as the father on the child's birth certificate and has not signed a denial of paternity;**

**(4) the child's mother has named the man as the child's father and the man has not signed a denial of paternity;**

5) the man has been adjudicated to be the child's father;

(6) the man has acknowledged himself, orally or in writing, to be the child's father and the mother agrees; or

(7) on the basis of genetic testing, the man is indicated to be the child's biological father.

Md. Code Ann., Fam. Law § 5-3A-06 (West). Under subsections (1) through (4), as of **this** moment, Meng Zhang is Charlotte Zhang's father as a matter of law. So, yes, the law is every bit as helpful as Wei believes it to be, because Plaintiffs are dealing with presumption that another man is Zhang's father. If they are to try and obtain a Rule 35 Order in the face of that presumption, they need a lot more than a *belief* regarding genetic paternity. Yes, the law also provides a man can be a father "on the basis of genetic testing." *Id.* § 5-3A-06(a)(7). That is irrelevant here, as no such genetic test has been presented to rebut the presumption. Speculating that evidence could potentially be used to establish paternity under Maryland law is circular and unhelpful.

Further, the importance of the legal presumption of parentage when attempting to obtain a Rule 35 order for genetic paternity testing has been articulated by *Minnesota Life Ins. Co. v. Jones*, 771 F.3d 387, 388 (7th Cir. 2014) (Posner, J.). Am. Pet at 23-24. Plaintiffs try to dimmish the value of *Minnesota Life* on the grounds that it is an insurance case. Answer at 21. This was not a secret—Wei

discussed the factual background at some length and explained why Posner's holding—which still related to the availability of a Rule 35 Order for genetic testing—was persuasive here. Am. Pet. at 23-24. The fact that the case involved the issue of beneficiaries, not defamation, does not make the opinion any less persuasive.

Even without the presumption, there is no evidence to support good cause. Plaintiffs argued they "have been stymied in their attempts to subpoena the results of a previously conducted 23andMe DNA test." Answer at 16. They also argue that the District Court had "proof that the test would yield material information." Answer at 21. The "proof" is of an un-authenticated email string regarding a subpoena of Bob Suettinger—a private non-party—and a conferral letter from private counsel. Answer at 16 (citing Dkts. 84-5 & 84-7). Plaintiffs do not analyze either document. Perhaps because neither provide evidence that Plaintiffs were "stymied" in obtaining evidence that Meng Zhang is not the father. The email merely recounts that Mr. Suettinger had no communications to produce between himself and 23andme. Dkt 84-5. There is nothing in the email indicating that Plaintiffs sought the actual genetic test from Mr. Suettinger, let alone that 23andMe no longer had that information. Likewise, the letter (Dkt. 84-7) is a conferral from 23andMe's counsel regarding information about Mr. Suettinger (not a request for genetic test results). The letter states the grounds for objecting to the subpoena, including that the

subpoena failed to comply with applicable law, but not the actual subpoena. There is no evidence before the District Court that Zhang ever subpoenaed 23andMe for a copy of her own genetic testing results, let alone sought to enforce the subpoena in court. It is unclear how objections to a subpoena about Mr. Suettinger is evidence of being "stymied" in obtaining the results of the alleged 23andMe test.

To shift focus, Plaintiffs argue that Wei has taken the position that Plaintiffs should have sought a Rule 35 order to test Meng Zhang as a prerequisite. Answer at 21. This is not correct. Am. Pet at 24. Meng Zhang is listed as Zhang's father on her birth certificate and raised her as his daughter when she was young. There is not a shred of evidence that he is *not* Zhang's genetic parent. Wei answered that Plaintiffs should show evidence rebutting this presumption. A genetic test would certainly be some evidence, but it does not need to be compelled (he could consent if he supposedly agrees that he is not Zhang's father), and there are other means of obtaining such potential evidence. Starting with some evidence that Mr. Zhang is not Zhang's father is a better place to start than rushing to court and demanding the genetic code of a different man.

Essentially, Plaintiffs reject the idea that Plaintiffs bore any burden to support a showing of good cause. Answer at 21. This hits at the fundamental concern with the District Court's ruling. It essentially allowed a party's *allegations*—not evidence—that medical testing is necessary to rule the day. That is not how the good

cause standard works.  If allegations alone are enough, then there is no functional distinction between a Rule 26 standard and a Rule 35 standard.

**D.      The Court Abused its Discretion By Ignoring Wei's Reasonable and Credible Concerns the CCP Seeks to Invade His Privacy to Harass Him for His Civil Rights Work**

The Rule 35 Order's final legal error is that it ignored the "distinct danger of Rule 35 being used as a sort of retaliatory measure." Am. Pet. at 25-29 (quoting *Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs*, 315 F.R.D. 612, 617 (N.D. Fla. 2016)).  Wei outlined the "distinct danger" of the CCP's use of "lawfare", and his credible belief that Liu is supporting the CCP by harassing him with this litigation as part of the lawfare phenomenon. *Id.*

Plaintiffs' response is both hypocritical and threadbare.  They belittle Wei's beliefs because they are not "fact." The irony is thick.  Nothing in their case constitutes "fact." It is not fact that Wei raped Liu—it is an allegation.  It is not fact that a rape led to the conception of Zhang—it is an allegation.  Yet, she demands that her allegations be the sole consideration before the court.

Aside from the hypocrisy, the argument overlooks the context of Wei's concerns.  It is undisputed that Wei is a Chinese dissident who was imprisoned in China.  It is undisputed that Plaintiffs sued Wei in DC Court, and after five years Wei prevailed.  It is undusputed that rather than appeal that ruling, Plaintiffs dragged Wei into this action.  It is undisputed that the CCP uses private, civil litigation to

harass dissidents in the United States. So, while both parties have advanced their own allegations—their own beliefs—Wei has presented this Court with facts that reasonably support his beliefs. Wei's concerns were not conjured from thin air. Furthermore, Plaintiff bear the burden to obtain a Rule 35 order, not Wei.

Plaintiffs also posit the overly simple and dangerous argument that if Wei is innocent and this is just a CCP plot, he would have consented to the paternity test. Answer at 22. Yes, and if you are innocent, why would you want an attorney present when questioned by the police? Insisting on respecting legal rights or privacy should never be weaponized and massaged into an inference of guilt. At least not in this country.

Finally, Liu briefly argues that a party's beliefs cannot be the basis for mandamus review. Answer at 22 (citing *In re Grand Jury Subpoenas, Apr., 1978, at Baltimore*, 581 F.2d 1103, 1107 (4th Cir. 1978)). *In re Grand Jury Subpoena* has no application, as it involved a challenged to grand jury subpoena power, which is a legal standard different than a Rule 35 examination and does not consider heightened elements of controversy and good cause. *See generally* 581 F.2d at 1108. Further, in *In re Grand Jury Subpoena*, the petitioner's entire basis for seeking a writ was based on a belief of a pattern of improper motive; here, Wei has detailed numerous legal errors that do not relate to his concerns regarding lawfare.

## CONCLUSION

The District Court's Rule 35 Order creates a dangerous precedent.  It has allowed a party to demand a Rule 35 physical examination on the basis of claims against a different party and allegations, not evidence.  This ruling gives plaintiffs everywhere enormous power—so long as she can pass a Rule 8 threshold, they can put a medical condition in controversy and just state, not prove, they have good cause.  This is bad enough, but the fact that it has occurred to this man—a target of the CCP and a man who has suffered the indignity of a Chinese prison for over 18 years—is deeply troubling.  As such, the Court should issue a writ directing that the District Court withdraw its Order and deny Plaintiffs' motion for a Rule 35 paternity test of Wei.

Dated this 12th day of September, 2025

Respectfully submitted,

/s/ David Barger
David G. Barger (MD Bar# 14716)
Greenberg Traurig LLP
1750 Tysons Blvd.
Suite 1000
McLean, VA 22102
Tel: (703) 749-1300
Email: bargerd@gtlaw.com

## CERTIFICATE OF SERVICE

I certify that on September 12, 2025, Petitioner's Petition of Writ of Mandamus was served by email (with written consent) on the following persons at the email addresses shown:

Times Wang
Farra & Wang PLLC
twang@farrawang.com
*Attorney for Respondents Huaizhao Liu and Charlotte Zhang*

John P. Rowley III (admitted *pro hac vice*)
Adriaen M. Morse Jr. (Md Bar No.18106)
SECIL Law PLLC
jrowley@secillaw.com
amorse@secillaw.com

*Counsel for Respondent Ciping Huang*

/s/ David Barger
David G. Barger